## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANCIS TWARDY,<br>Subject Property: 2257 North Firelane Road,<br>Southampton NJ 08088<br><br>CLARENCE E. OWENS and<br>FRANCES ROGERS,<br>Subject Property: 11 Stafford Lane<br>Willingboro, NJ 08046<br><br>YVETTE LABOSSIERE and<br>ANTHONY MOMPEROUSSE,<br>Subject Property: 111 Edison Road,<br>Cherry Hill, NJ 08034<br><br>JEANNE PALUMBO,<br>Subject Property: 106 Saint Regis Dr.,<br>Woodbury, NJ 08096<br><br>CELESTE PAYNE<br>Subject Property: 101 Stevens Ct.,<br>Camden, NJ 08103<br><br>ALVIN FRANCIS and MARSHA FRANCIS,<br>Subject Property: 12 Stafford Lane,<br>Willingboro, NJ 08046<br><br>THOMAS M. TAYLOR<br>Subject Property: 322 Lakeview Ave.,<br>Haddonfield, NJ 08033<br><br>JACQUELINE JENNINGS,<br>Subject Property: 169 Club House Dr.,<br>Willingboro, NJ 08046<br><br>GEORGE WHITE JR.,<br>Subject Property: 2203 Baird Blvd.,<br>Camden, NJ 08105<br><br>CONSUMER FINANCIAL PROTECTION<br>BUREAU,<br>1700 G Street, NW<br>Washington, DC 20552 | **COMPLAINT WITH JOINDER OF REQUIRED PARTIES, CONSUMER FINANCIAL PROTECTION BUREAU AND THE DISTRICT OF COLUMBIA, AS PLAINTIFFS PURSUANT TO FED. R. CIV. P. 19**<br><br>Civil No. _____<br><br><u>**JURY TRIAL DEMANDED**</u><br><br>Case: 1:24–cv–01200          JURY DEMAND<br>Assigned To : Contreras, Rudolph<br>Assign. Date : 4/24/2024<br>Description: Pro se. Gen. Civ. (F–Deck) |

and

THE DISTRICT OF COLUMBIA,
Office of the Attorney General
441 Fourth Street, N.W.
Washington, DC 20001

Plaintiffs,

     v.

OCWEN FINANCIAL CORPORATION,

OCWEN LOAN SERVICING LLC,

and

PHH MORTGAGE CORPORATION,

Defendants,

## INTRODUCTION

The Plaintiffs named herein consist of : (i) individual consumers who were made parties to civil actions commenced in this Court on December 19, 2013 in Consumer Financial Protection Bureau, et al. v. Ocwen Financial Corporation, et al., Civil Action No. 13-02025; and January 3, 2018 in State of Alabama, et al. v. PHH Mortgage Corporation, Civil Action No. 18-00009, by and through the State Attorneys General appearing pursuant to authorities conferred upon them including, but not limited to, parens patriae and common law authority; (ii) Consumer Financial Protection Bureau ("*CFPB*" or "*the Bureau*") as a required party pursuant to Fed. R. Civ. P. 19, and a plaintiff/party previously before this Court in Civil Action No. 13-02025; and (iii) The District of Columbia ("*D.C.*"), through its Attorneys General, as a required party pursuant to Fed. R. Civ. P. 19, and a plaintiff/party previously appearing before this Court in Civil Action No.'s

13-02025 and 18-00009, on behalf of similarly situated consumers/citizens pursuant to authorities conferred upon them including, but not limited to, parens patriae and common law. The Plaintiffs as individual consumers, by and through the undesigned, appearing herein on their own behalf, respectfully allege as follows:

## NATURE OF ACTION

1.      This is a civil action filed by Plaintiffs as individual consumers, also naming the Bureau and D.C. as required parties pursuant to Fed. R. Civ. P. 19, against: (i) Ocwen Financial Corporation ("OFC") and Ocwen Loan Servicing, LLC ("OLS"), for continued misconduct subject of the civil complaint and consent judgment in this Court under Civil Action No. 13-02025, related to the servicing and foreclosure of single family residential mortgages, including by Homeward Residential, Inc. ("Homeward") and Litton Loan Servicing, LP ("Litton Loan") before their acquisition by Ocwen (OFC, OLS, Homeward, and Litton Loan are hereinafter collectively "Ocwen"); and (ii) PHH Mortgage Corporation ("PHH"), for continued misconduct subject of the civil complaint and consent judgment in this Court under Civil Action No. 18-00009, related to the servicing and foreclosure of single family residential mortgages before PHH's acquisition by OFC. Ocwen and PHH are collectively referred to herein as the "Servicers".

2.      As described in the allegations below: (i) the Servicers', after entering consent judgments in this Court under Civil Action No.'s 13-02025 and 18-00009, failed to identify the individual consumers named herein as Plaintiffs (and similarly situated consumers/citizens in this District and interstate) to remediate injuries caused by the Defendants, as was required by the foregoing consent judgments; (ii) the Servicers', after entering consent judgments in this Court under Civil Action No.'s 13-02025 and 18-00009, continued to engage in unfair, deceptive, and unlawful practices; and (iii) the Defendants misconduct that persist to present day, and civil

contempt of the foregoing consent judgments entered in this Court, resulted in continued premature and unauthorized foreclosures, continued violation of homeowners' rights and protections, and the continued use of false and deceptive affidavits and other documents.

## THE PARTIES

3.     The following parties named herein as Plaintiffs, are individual consumers and, hereinafter, collectively referred to as the "*Mass Tort Plaintiffs*", consisting of:

a.  Francis Twardy ("Mr. Twardy") as owner of real property located in New Jersey, and currently subjected to residential mortgage servicing and foreclosure proceedings by Ocwen and PHH.;

b.  Clarence E. Owens ("Mr. Owens") and Frances Rogers ("Ms. Rogers") as owner of real property located in New Jersey, and currently subjected to residential mortgage servicing and foreclosure proceedings by Ocwen and PHH.;

c.  Yvette Labossiere and Anthony Momperousse (hereinafter collectively referred to as "*the Momperousse's*"), former owners of real property located in New Jersey after being subjected to residential mortgage servicing and foreclosure proceedings by PHH.;

d.  Jeanne Palumbo ("Ms. Palumbo"), former owner of real property located in New Jersey after being subjected to residential mortgage servicing and foreclosure proceedings by Ocwen and PHH.;

e.  Celeste M. Payne ("Ms. Payne"), former owner of real property located in New Jersey after being subjected to residential mortgage servicing and foreclosure proceedings by PHH.;

f.  Alvin Francis and Marsha Francis (hereinafter collectively referred to as *"the Francis"*), former owners of real property located in New Jersey after being subjected to residential mortgage servicing and foreclosure proceedings by Ocwen.;

g.  Thomas M. Taylor ("Mr. Taylor"), former owner of real property located in New Jersey after being subject to residential mortgage servicing and foreclosure proceedings by Ocwen.;

h.  Jacqueline Jennings ("Ms. Jennings"), owner of real property located in New Jersey, that was subjected to residential mortgage servicing and foreclosure proceedings by Ocwen; and is presently subjected to residential mortgage servicing and pending foreclosure proceedings by Ocwen and PHH.; and

i.  George White Jr. ("Mr. White"), owner of real property located in New Jersey, that is subjected to residential mortgage servicing and foreclosure proceedings by Ocwen and PHH.

The foregoing Mass Tort Plaintiffs appearing in this matter on their own behalf, were made parties of interest in the civil actions in this Court under Civil Action No.'s 13-02025 and 18-00009, by the State Attorneys General appearing pursuant to authorities conferred upon them which includes, but not limited to, parens patriae and common law.

4.      The Bureau is named a Plaintiff herein as a required party pursuant to Fed. R. Civ. P. 19, and is subject to service of process because the CFPB claims an interest relating to the issues subject of this action, pursuant to Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. § 5491(a) et seq., and a plaintiff/party seeking relief against the Servicers' in this Court under Civil Action No. 13-02025.  The Bureau is authorized to take appropriate enforcement action to address

5

violations of Federal consumer financial law, including the CFPA, and has independent litigating authority. See 12 U.S.C. §§ 5511(c)(4); 5512(a); 5531(a); and 5564(a). Sections 1031 and 1036(a) of the CFPA, 12 U.S.C. §§ 5531 and 5536(a), prohibit unfair, deceptive, or abusive acts or practices, or other violations of Federal consumer financial law, by any covered person or service provider.  The Bureau's interest relating to the subject action is so situated that disposing of the action in the CFPB's absence may: (i) as a practical matter impair or impede the Bureau's ability to protect the interest; or (ii) leave the Mass Tort-Plaintiffs and similarly situated consumers/citizens, subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

5.     D.C., through its Attorneys General, is named a Plaintiff herein as a required party pursuant to Fed. R. Civ. P. 19, subject to service of process upon claiming an interest as a plaintiff/party before this Court in Civil Action No.'s 13-02025 and 18-00009, and appearing in both actions on behalf of consumers/citizens in D.C., the latter of whom are similarly situated as the Mass Tort Plaintiffs.  The Attorneys General for D.C. who, is authorized to bring this action pursuant to consumer protection enforcement authority conferred on them by applicable law and pursuant to parens patriae and common law authority, has an interest relating to the instant matter, which is so situated that disposing of the action in D.C.'s absence may: (i) as a practical matter impair or impede D.C.'s ability to protect the interest; or (ii) leave consumers/citizens of D.C. who, upon information and belief, are similarly situated as the Mass Tort Plaintiffs, subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

6.     Mass Tort Plaintiffs herein seek injunctive relief, restitution, and civil penalties for violation of the consumer protection laws of their States, while the Bureau and D.C. as required

parties named herein as Plaintiffs pursuant to Fed. R. Civ. P. 19, seek the same for violation of the consumer protection laws of D.C. and the CFPA.

7.      Defendant OFC, upon information and belief, is a publicly traded Florida corporation headquartered in Atlanta, Georgia, that provides residential mortgage servicing services. It engages in a variety of businesses related to residential mortgage servicing, and focuses on loan servicing, specialty servicing, and mortgage services. OFC transacts or has transacted business in this district and throughout the United States. On December 27, 2012, OFC acquired and became the successor in interest to Homeward, a servicer of residential mortgages and a Delaware corporation. OFC is a successor corporation to Homeward and is liable for the illegal practices, including those of Homeward, alleged in this Complaint. On September 1, 2011, OFC acquired and became the successor in interest to Litton Loan, a servicer of residential mortgages and a Delaware limited partnership. OFC is a successor corporation to Litton and is liable for the illegal practices, including those of Litton, alleged in this Complaint.

8.      Defendant OLS, upon information and belief, is a limited liability company and wholly owned subsidiary servicing company of OFC, and located in Palm Beach, Florida. OLS transacts or has transacted business in this district and throughout the United States.

9.      Defendant PHH, upon information and belief, was acquired by OFN acquired in or about October 1, 2018. On or about June 1, 2019, PHH became the successor by merger to OLS, and provides residential mortgage origination and servicing services with a principal place of business in Mount Laurel, New Jersey. PHH transacts or has transacted business in this district and throughout the United States.

10.     Ocwen and PHH named herein as Defendants are also defendants/parties named in the civil complaints filed and consent judgments entered in this Court under Civil Action No.'s

7

13-02025 and Civil Action No. 18-00009, respectively.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action because: (i) it presents a federal question, 28 U.S.C. § 1331; (ii) through joinder of the Bureau pursuant to Fed. R. Civ. P. 19, is "brought under Federal consumer financial law," 12 U.S.C. § 5565(a); and (iii) through joinder of D.C. through its Attorneys General, pursuant to their authority under 12 U.S.C. § 5552(a)(1).

12.     In addition, pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the subject matter of the state law claims asserted by the Mass Tort Plaintiffs, and the Attorneys General for D.C. as a party joined pursuant to Fed. R. Civ. P. 19, because those claims are so related to the claims brought under Sections 1031 and 1036(a) of the CFPA, 12 U.S.C. §§ 5531 by the Bureau as a party joined pursuant to Fed. R. Civ. P. 19, that they form part of the same case or controversy.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this District upon: (i) entry of consent judgments against the Defendants by this Court on February 26, 2014 in Civil Action No. 13-02025 and May 10, 2018 in Civil Action No. 18-00009; (ii) the Mass Tort Plaintiffs and citizens of D.C. were made parties to the civil complaints filed in Civil Action No.'s 13-02025 and 18-00009 by their State Attorneys General pursuant to the latter's authorities including parens patriae and common law; and (iii) upon information and belief, the events or omissions giving rise to the claim are applicable to citizens in this District where D.C. through tis Attorneys General is named a Plaintiff herein as a required party pursuant to Fed. R. Civ. P. 19.

14.     Venue is also proper in this District under 12 U.S.C. § 5564(f), because the Bureau is named as Plaintiff herein as a required party pursuant to Fed. R. Civ. P. 19.

## THE MORTGAGE SERVICING INDUSTRY

15.    The single-family mortgage servicing industry consists of financial services and other firms that service mortgages for residential properties designed to house one-to-four family dwellings.

16.    For more than thirty years, mortgages typically have been "pooled" to create an investment vehicle, often denominated as a trust, and interests in the trusts have been sold to investors that own interests in payment streams generated by principal and interest payments by the borrowers.

17.    A "servicer" is responsible for mortgage administration activities, known as servicing activities, which generally include collecting payments from mortgagors; applying payments made in an agreed-upon order to the mortgagor's indebtedness; distributing payments after allowable deductions to the investment trust entities for distribution to investors; making advances to cover delinquent mortgage payments and other costs, such as the costs of protecting and maintaining properties that collateralize mortgage loans when mortgagors fail to do so; pursuing collections from delinquent mortgagors; and pursuing either loss mitigation or foreclosure, as appropriate, to minimize the loss to investors and others when mortgagors become delinquent on mortgage payments.

18.    A servicer who does not originate a mortgage loan may become the servicer by purchasing the "mortgage servicing rights" or by entering into a contract with the "master servicer" to act on its behalf as "subservicer." Such transfers can occur at various stages of repayment of the mortgage, including where the borrower is delinquent in payments and may seek loss mitigation assistance from the servicer to avoid foreclosure on the loan.

19.    Attached hereto as **Exhibit G**, is a true and correct copy of the March 22, 2020

letter from several trade associations which, upon information and belief, the Defendants named herein are members of at least one, and addressed to six Federal Agencies by through their respective officers, admitting at page 3 that:

> As background, when a borrower fails to make their monthly mortgage payment, the mortgage servicer must still pay the principal and interest to investors, as well as pay the real estate taxes, homeowners' insurance, and mortgage insurance on their behalf. In the regular course of business, all servicers maintain liquid reserves to cover these advances. Attached to this letter is a short summary of how servicing advances work and sizing the dollar magnitude we could be facing (Attachment 3).

20.     Ocwen and PHH services and subservices home mortgage loans secured by residential properties owned by individual citizens of each of the Plaintiff States and of the United States.

21.     Ocwen and PHH are a "covered person" engaged "in offering or providing a consumer financial product or service," as those terms are defined in the CFPA, and the Defendants are subject to the CFPA's prohibition on unfair, deceptive and abusive acts or practices. 12 U.S.C. §§ 5481(6), 5531, and 5536(a).

22.     Ocwen and PHH are engaged in trade or commerce in each of the Mass Tort Plaintiffs' States and D.C., and the Defendants are subject to the consumer protection laws of the Plaintiffs' States in the conduct of their debt collection, mortgage servicing, loss mitigation and foreclosure activities. The consumer protection laws of the Mass Tort Plaintiffs' States and D.C. include laws prohibiting unfair or deceptive acts or practices.

23.     At all times relevant to the instant matter, Ocwen and PHH specialized in default servicing where borrowers are more likely to encounter hardships or difficulties making payments. At all times relevant to the instant matter, OLS and PHH also frequently acquired mortgage servicing rights through transfers, involving the acquisition of data, information, and documents

retained by the prior servicer about borrowers' loans.

24.    At all times relevant to the instant matter, personnel for Defendants OLS and PHH frequently interacted with borrowers who were declared by Defendants to be delinquent or are at risk of becoming delinquent on their mortgage loans, who have complaints or inquiries about their mortgages, or who require loss mitigation assistance.

25.    At all times relevant to the instant matter, Defendants OLS and PHH regularly reviewed mortgage loans for potential loss mitigation or loan modification options, and conducted or managed foreclosures.

**THE BUREAU'S AND STATES ATTORNEYS GENERAL PRIOR ALLEGATIONS OF DEFENDANTS' MORTGAGE SERVICING MISCONDUCT SUBJECT OF CIVIL ACTIONS AND CONSENT JUDGMENTS IN THIS COURT**

26.    Attached hereto as **Exhibit A** is a true and correct copy of the civil complaint filed in this Court on December 19, 2013 in Civil Action No. 13-02025, wherein at ¶20 the Bureau, together with the State Attorneys General as plaintiffs/parties appearing therein on behalf of the Mass Tort Plaintiffs and similarly situated consumers/citizens of D.C., alleged that Ocwen (along with Litton Loan and Homeward who were acquired by OLS in 2011 and 2012, respectively), in the course of its mortgage servicing activities, engaged in the following acts and practices:

    a.  failing to timely and accurately apply payments made by borrowers and failing to maintain accurate account statements;

    b.  charging unauthorized fees for default-related services;

    c.  imposing force-placed insurance when the Servicers knew or should have known that borrowers already had adequate coverage;

    d.  providing false or misleading information in response to borrower complaints;

    e.  providing false or misleading information to borrowers regarding loans that

have been transferred from other servicers;

f.  failing to provide accurate and timely information to borrowers who seek information about loss mitigation services, including loan modifications;

g.  falsely advising borrowers that they must be at least 60 days delinquent in loan payments to qualify for a loan modification;

h.  misrepresenting to borrowers that loss mitigation programs would provide relief from the initiation of foreclosure or further foreclosure efforts;

i.  providing false or misleading information to consumers about the status of the loss mitigation review, including while referring loans to foreclosure;

j.  providing false or misleading information to consumers about the status of foreclosure proceedings where the borrower was in good-faith actively pursuing a loss mitigation alternative offered by the Servicers;

k.  failing to properly calculate borrowers' eligibility for loan modification programs and improperly denying loan modification relief to eligible borrowers;

l.  failing to properly process borrowers' applications for loan modifications, including failing to account for documents submitted by borrowers and failing to respond to borrowers' reasonable requests for information and assistance, and as a result, denying loan modifications to consumers who were eligible;

m.  providing false or misleading reasons for denial of loan modifications;

n.  with respect to transferred loans, failing to honor in-process trial modifications agreed to by prior servicers;

o.  with respect to transferred loans with in-process trial and permanent

modifications, deceptively seeking to collect payments from the consumer under the mortgage's original unmodified terms;

p. preparing, executing, notarizing, and presenting false and misleading documents, filing false and misleading documents with courts and government agencies, or otherwise using false or misleading documents as part of the foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments); and

q. preparing, executing, notarizing, and filing affidavits in foreclosure proceedings, whose affiants lacked personal knowledge of the assertions in the affidavits and did not review any information or documentation to verify the assertions in such affidavits. This practice of repeated false attestation of information in affidavits is popularly known as "robosigning."

27.     Attached hereto as **Exhibit A1** is a true and correct copy of the February 26, 2014 consent judgment entered by this Court in Civil Action No. 13-02025 against Ocwen (Doc. 12) (hereinafter referred to as the "*Ocwen Consent Judgment*"), setting forth the following provisions relevant to the instant matter:

a. Ocwen agreed that certain claims and remedies are not released, as provided in Section IV of Exhibit F annexed to the Consent Judgment. (Doc. 12 at ¶10);

b. The Ocwen Consent Judgment would remain in full force and effect for three years from the date of entry on February 26, 2014; and the Court would retain jurisdiction for purposes of enforcing or remedying any outstanding violations that have occurred and were not cured during the Term. (Doc. 12 at ¶15); and

c. Nothing in the Ocwen Consent Judgment shall relieve Ocwen of their obligation

to comply with applicable state and federal law. (Doc. 12 at ¶17).

28.      Attached hereto as **Exhibit A2** is a true and correct copy of "*Exhibit F*" attached to

the Ocwen Consent Judgment entered in this Court on February 26, 2014 in Civil Action No. 13-

02025 (Doc. 12-6), wherein Section IV sets forth claims and remedies that were not released by

the Ocwen Consent Judgment, of which includes the following that are relevant to the instant

matter:

     a.  Claims and defenses asserted by third parties, including individual mortgage
        loan borrowers on an individual or class basis. (Doc. 12-6 at ¶11);

     b.  Claims seeking injunctive or declaratory relief to clear a cloud on title where
        the Covered Conduct has resulted in a cloud on title to real property under state
        law; without waiving or barring any legal or factual argument related to the
        validity of past mortgage assignments or foreclosures that could be made in
        support of claims not released herein, including, without limitation, all claims
        preserved under paragraphs 1 through 15 of Section IV of the Release. (Doc.
        12-6 at ¶12);

     c.  Authority to resolve consumer complaints brought to the attention of Ocwen
        for resolution outside of the monitoring process, as described in Section H of
        the Enforcement Terms attached to the Consent Judgment as "*Exhibit D*". (Doc.
        12-6 at ¶13).

29.      Attached hereto as **Exhibit B** is a true and correct copy of the civil complaint filed

in this Court on January 3, 2018 in Civil Action No. 18-00009, wherein at ¶17 the State Attorneys

General appearing as plaintiffs/parties on behalf of the Mass Tort Plaintiffs and similarly situated

consumers/citizens of D.C., alleged that PHH in the course of its mortgage servicing activities

during the period from January 1, 2009, to December 31, 2012, engaged in the following acts and practices:

 a. failing to timely and accurately apply payments made by certain borrowers and failing to maintain accurate account statements;

 b. charging unauthorized fees for default-related services;

 c. threatening foreclosure and conveying conflicting messages to certain borrowers engaged in loss mitigation;

 d. failing to properly respond to certain borrowers' complaints and reasonable requests for information and assistance;

 e. failing to properly process borrowers' applications for loan modifications, including failing to account for and retain loss mitigation documents submitted by borrowers;

 f. failing to maintain complete loan servicing files;

 g. failing to maintain adequate documentation to determine whether PHH had standing to foreclose;

 h. failing to properly oversee third party vendors retained for servicing and foreclosure operations, including third party vendors responsible for preparing, reviewing, and executing foreclosure documents;

 i. preparing, executing, notarizing, and presenting documents with incorrect or incomplete information with courts and government agencies, or otherwise using incorrect or incomplete documents as part of the foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments);

j. preparing, executing, notarizing, and filing affidavits in foreclosure proceedings, whose affiants lacked personal knowledge of the assertions in the affidavits and did not review any information or documentation to verify the assertions in such affidavits; and

k. failing to maintain a comprehensive process for the preparation, execution, and notarization of certain documents that are part of the foreclosure process including, but not limited to, affidavits, declarations and certifications.

30. Attached hereto as **Exhibit B1** is a true and correct copy of the May 10, 2018 consent judgment entered by this Court in Civil Action No. 18-00009 against PHH (Doc. 58) (hereinafter referred to as the "*PHH Consent Judgment*"), setting forth the following provisions relevant to the instant matter:

a. PHH agreed that certain claims and remedies are not released, as provided in Part III of "*Exhibit C*" annexed to the Consent Judgment. (Doc. 58 at ¶20);

b. The PHH Consent Judgment would remain in full force and effect for three years from the "Implementation Date". (Doc. 58 at ¶23); and

c. Nothing in the PHH Consent Judgment shall relieve PHH of its obligation to comply with applicable state and federal law.  (Doc. 58 at ¶25).

31. Attached hereto as **Exhibit B2** is a true and correct copy of "*Exhibit C*" attached to the PHH Consent Judgment entered in this Court on May 10, 2018, under Civil Action No. 18-00009 (Doc. 58-1), wherein Part III sets forth claims and remedies that were not released by the PHH Consent Judgment, of which includes the following that are relevant to the instant matter:

a. Claims and defenses asserted by third parties, including individual mortgage loan borrowers on an individual or class basis. (Doc. 58-1 at ¶9);

16

b. Claims seeking injunctive or declaratory relief to clear a cloud on title where the Covered Conduct has resulted in a cloud on title to real property under state law; without waiving or barring any legal or factual argument related to the validity of past mortgage assignments or foreclosures that could be made in support of claims not released herein, including, without limitation, all claims preserved under paragraphs 1 through 13 of Section III of the Release. (Doc. 58-1 at ¶10);

c. Authority to resolve consumer complaints brought to the attention of PHH by the State Attorneys General. (Doc. 58-1 at ¶11).

**DEFENDANTS' CONTINUED MORTGAGE SERVICING MISCONDUCT AFTER AND DESPITE CONSENT JUDGMENTS ENTERED BY THIS COURT**

32.    Mass Tort Plaintiffs aver that, despite and after entry of the Ocwen and PHH Consent Judgments in this Court on February 26, 2014 and May 10, 2018, respectively, Ocwen and PHH failed to identify the injuries done to the Mass Tort Plaintiffs and similarly situated consumers/citizens of D.C. subject to and during the time periods relevant to said consent judgments; and, consequently, Defendants failed to remediate said injuries done to the Mass Tort Plaintiffs and similarly situated consumers/citizens of D.C..

33.    Mass Tort Plaintiffs further aver that, despite and after entry of the Ocwen and PHH Consent Judgments in this Court on February 26, 2014 and May 10, 2018, respectively, Ocwen and PHH, in the course of the Defendants' mortgage servicing activities, willfully continued to engage in unfair, deceptive, and unlawful mortgage servicing and foreclosure practices set forth in (and subject of) the foregoing civil actions and consent judgments in this Court, resulting in continued premature and unauthorized foreclosures, continued violation of Mass Tort Plaintiffs' rights and protections, and the continued use of false and deceptive affidavits and other documents.

34.     The following is a brief, but not all inclusive, recital of instances demonstrating the Servicers': (i) failure to identity the Mass Tort Plaintiffs and remediate injuries as required by the Ocwen and PHH Consent Judgments entered by this Court in Civil Action No.'s 13-02025 (Doc.'s 12, 12-6) and 18-00009 (Doc.'s 58, 58-1); (ii) continued engagement in unfair, deceptive, and unlawful mortgage servicing and foreclosure practices that resulted in continued premature and unauthorized foreclosures, continued violation of Mass Tort Plaintiffs' rights and protections, and the continued use of false and deceptive affidavits and other documents, after (and despite) entry of the Ocwen and PHH Consent Judgments; and (iii)  civil contempt of the Ocwen and PHH Consent Judgments entered by this Court in Civil Action No.'s 13-02025 (Doc.'s 12, 12-6) and 18-00009 (Doc.'s 58, 58-1), upon Ocwen and PHH failing to comply with the provisions set forth therein in the course of Defendants' mortgage servicing activities:

    a.  As it pertains to Mr. Twardy, Ocwen and PHH - with the assistance of third-party vendors – unlawfully commenced foreclosure proceedings in 2009 and 2012, the latter of which continues to present date wherein Defendants are attempting to unlawfully seize Mr. Twardy's real property, by: (i) preparing, executing, and presenting false and misleading documents with the state court and other government agencies, (including, but not limited to, affidavits, declarations, certifications, and assignments); (ii) preparing, executing, notarizing, and filing affidavits in foreclosure proceedings, whose affiants lacked personal knowledge of the assertions in the affidavits and did not review any information or documentation to verify the assertions in such affidavits; (iii) failing to properly oversee third party vendors retained for servicing and foreclosure operations, including third party vendors responsible for preparing,

reviewing, and executing foreclosure documents; and (iv) failing to maintain adequate documentation to determine whether Defendants' had standing to foreclose.;

b. As it pertains to Mr. Owens and Mrs. Rogers, Ocwen and PHH - with the assistance of third-party vendors – unlawfully commenced foreclosure proceedings in 2009 and 2015, the latter of which continues to present date, wherein the Defendants are attempting to unlawfully seize Mr. Owens' real property, by: (i) preparing, executing, and presenting false and misleading documents with the state court and other government agencies, (including, but not limited to, affidavits, declarations, certifications, and assignments); (ii) preparing, executing, notarizing, and filing affidavits in foreclosure proceedings, whose affiants lacked personal knowledge of the assertions in the affidavits and did not review any information or documentation to verify the assertions in such affidavits; (iii) failing to properly oversee third party vendors retained for servicing and foreclosure operations, including third party vendors responsible for preparing, reviewing, and executing foreclosure documents; (iv) failing to maintain adequate documentation to determine whether Defendants' had standing to foreclose; (v) failing to timely and accurately apply payments made by borrowers and failing to maintain accurate account statements; (vi) charging unauthorized fees for default-related services; (vii) providing false or misleading information in response to borrower complaints; (viii) falsely advising borrowers that they must be at least 60 days delinquent in loan payments to qualify for a loan modification; and (ix) failing to provide accurate

and timely information to borrowers who seek information about loss mitigation services, including loan modifications.;

c. As it pertains to the Momperousse's, PHH - with the assistance of third-party vendors – unlawfully commenced foreclosure proceedings in 2009 and 2012, the latter of which resulted in the unlawful seizure of the Momperousse's real property in 2023, by: (i) preparing, executing, and presenting false and misleading documents with the state court and other government agencies, (including, but not limited to, affidavits, declarations, certifications, and assignments); (ii) preparing, executing, notarizing, and filing affidavits in foreclosure proceedings, whose affiants lacked personal knowledge of the assertions in the affidavits and did not review any information or documentation to verify the assertions in such affidavits; (iii) failing to properly oversee third party vendors retained for servicing and foreclosure operations, including third party vendors responsible for preparing, reviewing, and executing foreclosure documents; (iv) failing to maintain adequate documentation to determine whether Defendant had standing to foreclose; (v) failing to timely and accurately apply payments made by borrowers and failing to maintain accurate account statements; (vi) charging unauthorized fees for default-related services; and (vii) providing false or misleading information in response to borrower complaints.

d. As it pertains to Ms. Palumbo, Ocwen and PHH - with the assistance of third-party vendors - commenced foreclosure proceedings in 2009 and 2014, the latter of which resulted in the unlawful seizure of Ms. Palumbo's real property

in 2020, by: (i) preparing, executing, and presenting false and misleading documents with the state court and other government agencies, (including, but not limited to, affidavits, declarations, certifications, and assignments); (ii) preparing, executing, notarizing, and filing affidavits in foreclosure proceedings, whose affiants lacked personal knowledge of the assertions in the affidavits and did not review any information or documentation to verify the assertions in such affidavits; (iii) failing to properly oversee third party vendors retained for servicing and foreclosure operations, including third party vendors responsible for preparing, reviewing, and executing foreclosure documents; (iv) failing to maintain adequate documentation to determine whether Defendants' had standing to foreclose; (v) charging unauthorized fees for default-related services; and (vii) providing false or misleading information in response to borrower complaints.

e.   As it pertains to Ms. Payne, PHH - with the assistance of third-party vendors - commenced foreclosure proceedings in 2012 and resulted in the unlawful seizure of Ms. Payne's real property in or about 2018, by: (i) preparing, executing, and presenting false and misleading documents with the state court and other government agencies, (including, but not limited to, affidavits, declarations, certifications, and assignments); (ii) preparing, executing, notarizing, and filing affidavits in foreclosure proceedings, whose affiants lacked personal knowledge of the assertions in the affidavits and did not review any information or documentation to verify the assertions in such affidavits; (iii) failing to properly oversee third party vendors retained for servicing and

foreclosure operations, including third party vendors responsible for preparing, reviewing, and executing foreclosure documents; (iv) failing to maintain adequate documentation to determine whether Defendant had standing to foreclose; (v) failing to timely and accurately apply payments made by borrowers and failing to maintain accurate account statements; (vi) charging unauthorized fees for default-related services; and (vii) providing false or misleading information in response to borrower complaints.;

f.  As it pertains to the Francis', Ocwen - with the assistance of third-party vendors - commenced foreclosure proceedings in 2009 and 2014, the latter of which resulted in the unlawful seizure of the Francis' real property in 2017, by: (i) preparing, executing, and presenting false and misleading documents with the state court and other government agencies, (including, but not limited to, affidavits, declarations, certifications, and assignments); (ii) preparing, executing, notarizing, and filing affidavits in foreclosure proceedings, whose affiants lacked personal knowledge of the assertions in the affidavits and did not review any information or documentation to verify the assertions in such affidavits; (iii) failing to properly oversee third party vendors retained for servicing and foreclosure operations, including third party vendors responsible for preparing, reviewing, and executing foreclosure documents; (iv) failing to maintain adequate documentation to determine whether Defendant had standing to foreclose; (v) charging unauthorized fees for default-related services; and (vii) providing false or misleading information in response to borrower complaints.

g. As it pertains to Mr. Taylor, Ocwen - with the assistance of third-party vendors - commenced foreclosure proceedings in 2015 and caused the unlawful seizure of Mr. Taylor's real property in or about 2017, by: (i) preparing, executing, and presenting false and misleading documents with the state court and other government agencies, (including, but not limited to, affidavits, declarations, certifications, and assignments); (ii) preparing, executing, notarizing, and filing affidavits in foreclosure proceedings, whose affiants lacked personal knowledge of the assertions in the affidavits and did not review any information or documentation to verify the assertions in such affidavits; (iii) failing to properly oversee third party vendors retained for servicing and foreclosure operations, including third party vendors responsible for preparing, reviewing, and executing foreclosure documents; (iv) failing to maintain adequate documentation to determine whether Defendant had standing to foreclose; (v) failing to timely and accurately apply payments made by borrowers and failing to maintain accurate account statements; (vi) charging unauthorized fees for default-related services; and (vii) providing false or misleading information in response to borrower complaints.;

h. As it pertains to Ms. Jennings, Ocwen - with the assistance of third-party vendors - commenced foreclosure proceedings in 2015 and voluntarily dismissed said action in or around 2018; and PHH is currently threatening to begin new foreclosure proceedings in an attempt to unlawfully seize Ms. Jenning's real property, by: (i) preparing, executing, and presenting false and misleading documents with the state court and other government agencies,

(including, but not limited to, affidavits, declarations, certifications, and assignments); (ii) preparing, executing, notarizing, and filing affidvits in foreclosure proceedings, whose affiants lacked personal knowledge of the assertions in the affidavits and did not review any information or documentation to verify the assertions in such affidavits; (iii) failing to properly oversee third party vendors retained for servicing and foreclosure operations, including third party vendors responsible for preparing, reviewing, and executing foreclosure documents; (iv) failing to maintain adequate documentation to determine whether Defendants' had standing to foreclose; (v) failing to timely and accurately apply payments made by borrowers and failing to maintain accurate account statements; (vi) charging unauthorized fees for default-related services; and (vii) providing false or misleading information in response to borrower complaints.; and

i.    As it pertains to Mr. White, Ocwen and PHH - with the assistance of third-party vendors - commenced foreclosure proceedings in 2008 and 2014 that were both voluntarily dismissed, and PHH is presently attempting to unlawfully seize Mr. White's real property through an unlawful foreclosure proceeding commenced in 2023, by: (i) preparing, executing, and presenting false and misleading documents with the state court and other government agencies, (including, but not limited to, affidavits, declarations, certifications, and assignments); (ii) preparing, executing, notarizing, and filing affidavits in foreclosure proceedings, whose affiants lacked personal knowledge of the assertions in the affidavits and did not review any information or documentation to verify the

assertions in such affidavits; (iii) failing to properly oversee third party vendors retained for servicing and foreclosure operations, including third party vendors responsible for preparing, reviewing, and executing foreclosure documents; (iv) failing to maintain adequate documentation to determine whether Defendants' had standing to foreclose; (v) charging unauthorized fees for default-related services; and (vi) providing false or misleading information in response to borrower complaints.

**a.  Defendants' Continued Servicing Misconduct Related to "DocX".**

35.     Mass Tort Plaintiffs aver that, after (and despite) entry of the Ocwen and PHH Consent Judgments by this Court in Civil Action No.'s 13-02025 (Doc.'s 12, 12-6) and 18-00009 (Doc.'s 58, 58-1), respectively, in the course of the Defendants' mortgage servicing activities, Ocwen and PHH willfully continued to engage in unfair, deceptive, and unlawful mortgage servicing and foreclosure processes against the Mass Tort Plaintiffs through Defendants' continued use of misrepresentations of fact, false claims, forged and falsely notarized documents, related to purported assignments created by the criminally implicated DocX, LLC ("DocX"), after (and despite of) the federal criminal indictment and plea agreement by DocX's executive on November 20, 2012 in United States District Court for the Middle District of Florida, Jacksonville Division (*See* United States of America v. Lorraine Brown (Case No. 3:12-cr-198-J-25MLR), upon admitting her participation in creating more than 1,000,000 forged and falsely notarized instruments that were recorded in land records and submitted in foreclosure proceedings.

36.     Attached hereto as **Exhibit C** is a true and correct copy of the November 20, 2012 indictment and plea agreement entered in United States of America v. Lorraine Brown (Case No. 3:12-cr-198-J-25MLR).

37.    Attached hereto as **Exhibit C1** is a true and correct copy of the April 13, 2011 cease and desist issued by Federal Authorities against DocX and its affiliate company in In the Matter of Lender Processing Services, Inc., et al. (FRB Docket Nos. 11-052-B-SC-1, 11-052-B-SC-2 and 11-052-B-SC-3 | FDIC-11-204b | OCC AA-EC-11-46 | OTS DC-11-039).

38.    Attached hereto as **Exhibit C2** is a true and correct copy of the January 30, 2013, Final Consent Judgment entered by the New Jersey State Attorneys General, DocX, and the latter's affiliate company in the Jeffrey S. Chiesa, Attorney General of the State of New Jersey vs. DocX, LLC, et al..

39.    Mass Tort Plaintiffs aver that, in the course of the Defendants' mortgage servicing activities, Ocwen and PHH willfully (and wantonly) created, authenticated, and/or trafficked pleadings and documents consisting of false statements/claims related to "assignment" instruments created by the criminally implicated DocX, under direction and supervision of the criminally convicted Lorraine Brown, after (and despite) entry of the November 20, 2012 federal criminal indictment and plea agreement (*See* United States of America v. Lorraine Brown (Case No. 3:12-cr-198-J-25MLR), resulting in continued premature and unauthorized foreclosures, continued violation of Mass Tort Plaintiffs' rights and protections, and the continued use of false and deceptive affidavits and other documents, as displayed within the forged/falsely notarized "assignment" instruments enclosed hereto in **Exhibit C3** that were created by DocX, resulting in the seizure of real property from (i) Mass Tort Plaintiff Ms. Palumbo in the year 2019, and (at least) two similarly situated consumers/citizens in the State of New Jersey under Docket No.'s: (ii) F-18496-18 in the year 2022, and (iii) Docket No. F-9977-19 in the year 2023; and Defendants are attempting to seize real property owned by (iv) Mass Tort Plaintiff Mr. Twardy through sheriff's sale scheduled by Defendants for April 11, 2024, causing Mr. Twardy to file a chapter 13

bankruptcy petition for stay protection to prevent the attempted unlawful seizure by Defendants.

**See Exhibit C3, for four out of 1,000,000+ forged/falsely notarized instruments created by the criminally implicated DocX, under the direction and supervision of the criminally convicted Lorraine Brown, used by Defendants to unlawfully seize real property of Mass Tort Plaintiff Ms. Palumbo and two similarly situated consumers/citizens in New Jersey; and Defendants are presently attempting to seize real property owned by Mass Tort Plaintiff Mr. Twardy:**

Document Prepared By:
Ron Meharg, 888-362-9638
When Recorded Return To:
DOCX
1111 Alderman Dr.
Suite 350
Alpharetta, GA  30005

American Home Mortgage Servicing, Inc. as
successor-in-interest to Option One Mortgage Corporation

Linda Green
Vice President

Document Prepared By:
Ron Meharg, 888-362-9638
When Recorded Return To:
DOCX
1111 Alderman Dr.
Suite 350
Alpharetta, GA  30005

American Home Mortgage Servicing, Inc., as servicer for U.S. Bank National Association, as Trustee for, Citigroup Mortgage Loan Trust Inc. Asset-Backed Pass-Through Certificates, Series 2006-AMC1, Under the Pooling and Servicing Agreement dated as of September 1, 2006

Linda Green
Vice President & Asst Secretary

Document Prepared By:
Ron Meharg, 888-362-9638
When Recorded Return To:
DOCX
1111 Alderman Dr.
Suite 350
Alpharetta, GA  30005

Sand Canyon Corporation formerly known as Option One
Mortgage Corporation

Shelly Scheffey
Vice President

Document Prepared By:
Ron Meharg, 888-362-9638
When Recorded Return To:
DOCX
1111 Alderman Dr.
Suite 350
Alpharetta, GA  30005

American Home Mortgage Servicing, Inc. as
successor-in-interest to Option One Mortgage Corporation

Linda Green
Vice President

40.    Mass Tort Plaintiffs further aver, upon information and belief, that the foregoing instance of Ocwen's and PHH's continued engagement in unfair, deceptive, and unlawful practices related to false claims regarding purported assignment instrument created criminally implicated DocX under direction and supervision of the criminally convicted Lorraine Brown, after (and despite) entering into the Ocwen and PHH Consent Judgments by this Court in Civil Action No.'s 13-02025 (Doc.'s 12, 12-6) and 18-00009 (Doc.'s 58, 58-1), was also done (and is presently being

done) to consumers/citizens in D.C. who are similarly situated as the Mass Tort Plaintiffs.

    **b.** **Defendants' Continued Servicing Misconduct Related to "MERS".**

    41.    Mass Tort Plaintiffs aver that, after (and despite) entry of the Ocwen and PHH Consent Judgments by this Court in Civil Action No.'s 13-02025 (Doc.'s 12, 12-6) and 18-00009 (Doc.'s 58, 58-1), in the course of the Defendants' mortgage servicing activities, Ocwen and PHH willfully (and wantonly) continued to engage in unfair, deceptive, and unlawful mortgage servicing and foreclosure processes against the Mass Tort Plaintiffs through Defendants' continued use of misrepresentations, omissions, false claims, along with forged and falsely notarized documents related to Mortgage Electronic Registration Systems, Inc. ("MERS").

    42.    Attached hereto as **Exhibit D** is a copy of the October 21, 2005 opinion and order issued in Mortgage v. Nebraska, 270 Neb. 529, 532-33 (Neb. 2005), wherein the Nebraska Supreme Court ruled in favor of MERS by stating that: "MERS argues that it does not acquire mortgage loans and is therefore not a mortgage banker under § 45-702(6) because it only holds legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosure) without the authorization of the members. Further, MERS argues that it does not own the promissory notes secured by the mortgages and has no right to payments made on the notes.".

    43.    Attached hereto as **Exhibit D1** is a true and correct copy of: (i) the February 11, 2011 certification of attorney Brandi Peeples ("Attorney Peeples") as counsel for MERS, that was submitted to the New Jersey Superior Court in In The Matter of Residential Mortgage Foreclosure Pleading and Document Irregularities (Docket No.: F-00238-11), stating in relevant part that: "MERS is not a mortgage servicer, nor does MERS own beneficial interests in promissory notes." (Id. at ¶9); and (ii) the August 22, 2011 opinion and order entered by the New Jersey Supreme

Court in In The Matter of Residential Mortgage Foreclosure Pleading and Document Irregularities (Docket No.: F-00238-11), releasing MERS from Administrative Order 01-2010, upon stating that: "And it appearing based on proofs submitted that MERS does not servicer any residential mortgages in New Jersey, does not originate mortgage loans in New Jersey, and that no residential foreclosure actions are instituted in its name in New Jersey....".

44.     Attached hereto as **Exhibit D2** is a true and correct of the April 13, 2011 cease and desist entered against MERS and its parent company MERSCORP Holdings Inc. ("MERS") in In the Matter of MERSCORP, Inc., et al. (OCC No. AA-EC-11-20 | Board of Governors Docket Nos. 11-051-B-SC-1, 11-051-B-SC-2 | FDIC-11-194b | OTS No. 11-040 | FHFA No. EAP-11-01), enjoining MERS, MERSCORP, and the latter's members from further engagement in unfair and deceptive practices subject of the order.

45.     Attached hereto as **Exhibit D3** is a copy of the June 29, 2010 order and opinion entered in Bank of N.Y. v. Raftogianis, 418 N.J. Super. 323, 348-49 (N.J. Super. 2010), denying summary judgment to a servicer and foreclosing plaintiff who created; trafficked; and/or presented an "assignment" instrument that falsely designated MERS (as the purported nominee) as the assignor of a consumer's mortgage loan, by stating in relevant part: "It was entirely appropriate to argue that the February 2009 assignment from MERS, as nominee for American Home Acceptance, to the Bank of New York as Trustee, was ineffective. From the court's perspective, that assignment was, at best, a distraction.".

46.     Attached hereto as **Exhibit D4** is a copy of the June 7, 2011 opinion and order in Bank of N.Y. v. Silverberg, 86 A.D.3d 274, 283 (N.Y. App. Div. 2011) ("In sum, because MERS was never the lawful holder or assignee of the notes described and identified in the consolidation agreement, the corrected assignment of mortgage is a nullity, and MERS was without authority to

assign the power to foreclose to the plaintiff. Consequently, the plaintiff failed to show that it had standing to foreclose.").

47.     Mass Tort Plaintiffs aver that, in the course of the Defendants' mortgage servicing activities, Ocwen and PHH willfully (and wantonly) created, authenticated, and/or trafficked pleadings and documents consisting of false statements/claims related to MERS, resulting in continued premature and unauthorized foreclosures, continued violation of Mass Tort Plaintiffs' rights and protections, and the continued use of false and deceptive affidavits and other documents, as displayed within the forged/falsely notarized "assignment" instruments falsely designating MERS as an "assignor" that are enclosed hereto in **Exhibit D5**, resulting in the seizure of real property from Mass Tort Plaintiffs (i) the Momperousse's in the year 2023; (ii) Ms. Payne in the year 2018; and (iii) the Francis' in the year 2017; and Defendants are presently attempting to foreclose and seize real property owned by Mass Tort Plaintiffs (iv) Mr. Owens since 2009 to present date; (v) Mr. White since 2008 to present date, and (vi) similarly situated consumers/citizens in the State of New Jersey under Docket No. F-27849-16 since 2008 to present date, upon trafficking; creating; and/or presenting in foreclosure proceedings.

**See Exhibit D5, for three "assignment" instruments, each falsely designating MERS (as nominee) as the "assignor", wherein the name and purported signatures for Ocwen's employee Noemi Morales appears, falsely claiming to be an officer of MERS within the instruments: (i) used by Ocwen to seize Mass Tort Plaintiffs the Francis' real property, and (ii) presently used by Defendants in an attempt to seize Mass Tort Plaintiff Mr. White's real property; compared with the third instrument presently used by Defendants against similarly situated citizens in NJ under Doc. No. F-27849-16, wherein the name and purported notarization of Noemi Morales appears:**

**See Exhibit D5, the name and purported signature of Ocwen's employee Noemi Morales, affixed to her notary application filed with and retrieved from Florida Department of State:**



48.     Mass Tort Plaintiffs are compelled to give testimony by and through Mr. Owens, the latter of whom personally witnessed and can attest to the horrific story of a World War II Veteran, Agrippa M. Wiggins ("Mr. Wiggins"), and his wife Reversa Wiggins ("Mrs. Wiggins"), (hereinafter collectively referred to as "the Wiggins'"), who at the approximate ages of 87 and 85 (respectively), were deceived by PHH into executing a predatory adjustable rate refinance mortgage loan on November 30, 2007; the Wiggins' were then subjected to unfair and deceptive servicing and foreclosure practices by PHH, of which included, Defendant's use of false claims and misrepresentations related to MERS in foreclosure proceedings commenced against the Wiggins' in 2013 under Docket No. F-35041-13; and by PHH also:

     a.   charging unauthorized fees for default-related services;

     b.   threatening foreclosure and conveying conflicting messages to certain borrowers engaged in loss mitigation;

     c.   failing to properly respond to certain borrowers' complaints and reasonable requests for information and assistance;

     d.   failing to properly process borrowers' applications for loan modifications, including failing to account for and retain loss mitigation documents submitted

by borrowers;

e.  failing to maintain adequate documentation to determine whether PHH had standing to foreclose;

f.  failing to properly oversee third party vendors retained for servicing and foreclosure operations, including third party vendors responsible for preparing, reviewing, and executing foreclosure documents;

g.  preparing, executing, notarizing, and presenting documents with incorrect or incomplete information with courts and government agencies, or otherwise using incorrect or incomplete documents as part of the foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments);

h.  preparing, executing, notarizing, and filing affidavits in foreclosure proceedings, whose affiants lacked personal knowledge of the assertions in the affidavits and did not review any information or documentation to verify the assertions in such affidavits; and

i.  failing to maintain a comprehensive process for the preparation, execution, and notarization of certain documents that are part of the foreclosure process including, but not limited to, affidavits, declarations and certifications.

49.    Upon information and belief, on October 22, 2010, Ms. Wiggins died. According to testimony from Mr. Wiggins during conversations with Mass Tort Plaintiff Mr. Owens that begin in 2015, prior and leading up to Ms. Wiggins' death in 2010, the elderly couples' last days together in this lifetime, were spent agonizing over PHH's deceptive and unfair practices pertaining to the Wiggins' repeated request for modification relief from the predatory refinance mortgage loan that

PHH originated in 2007, when the Wiggins' were surviving on a fixed income and nearly 90 years of age. After the death of Ms. Wiggins' wife in 2010, the Defendant's continued to ignore Mr. Wiggins' repeated pleas for assistance and continued with an illegal foreclosure of the 99-year-old WWII Vet, causing the unlawful seizure of his real property and eviction therefrom in 2019 by using false claims and documents related to MERS, along with the foregoing deceptive practices recited above in subsections of paragraph 48 and also subject of the PHH Consent Judgment entered by this Court in Civil Action Action No. 18-00009. In 2019, PHH unlawfully seized and evicted the 99-year-old WWII Veteran from his home. On April 30, 2020, Mr. Wiggins died upon contracting COVID-19 while residing in a senior facility, just several months shy of his 100th birthday. Enclosed hereto in **Exhibit D6**, are true and correct copies of the complaint; forged/falsely notarized MERS related "assignment" instrument; note; and affidavits used by PHH in the course of its servicing and foreclosure activities under Docket No. F-35041-13, to unlawfully seize the property of Mr. Wiggins (a 99-year-old WWII Veteran) in 2019, after (and despite) entry of the PHH Consent Judgment entered by this Court in Civil Action No. 18-00009. Enclosed hereto at https://youtu.be/untEL1uXLI8 (last checked 04/14/2024), is video evidence of two conversations between Mass Tort Plaintiff Mr. Owens and Mr. Wiggins during their time together from 2015 through 2019, wherein the WWII Veteran recounts his troubled experiences with PHH.

**Imagines of Mr. Wiggins in his U.S. Army uniform as a WWII Vet; Mr. & Mrs. Wiggins, the latter of whom died in 2010; and Mr. Wiggins' obituary, dying several months shy of his 100th birthday, after PHH unlawfully seized his real property using false claims/documents related to MERS:**

  

by MERSCORP as the parent company of MERS at https://www.mersinc.org/about/faq (last checked 04/11/2024), admitting at "*Frequently Asked Questions*" that MERS is not a document custodian with physical possession of any residential mortgage loans wherein MERS is named within the security instruments (i.e. mortgage, deed of trust) as the purported nominee for a lender, acting as the mortgagee:

Does MERS have the documents for loans registered on the MERS® System?                                        ∧

No. MERS, MERSCORP Holdings or the MERS® System are not document custodians and do not hold promissory notes or mortgage documents on behalf of lenders, servicers or investors. We are not responsible for keeping mortgage records—the servicer maintains the loan files.

51.    Mass Tort Plaintiffs further aver, upon information and belief, that in the course of the Defendants' mortgage servicing activities in this District (and interstate), the Defendants willfully (and wantonly) created, authenticated, and/or trafficked pleadings and documents consisting of false statements/claims related to MERS, resulting in continued premature and unauthorized foreclosures, continued violation of the rights and protections for persons in D.C., as displayed within the three "Notice of Lis Pendens" and three forged/falsely notarized "assignment" instruments that were created/trafficked by Ocwen and PHH against citizens of D.C. in Docket No.'s 2024-CAB-000986; 2024-CAB-001137; and 2024-CAB-00825 enclosed herein as **Exhibit D8**, after (and despite) entering into the Ocwen and PHH Consent Judgments by this Court in Civil Action No.'s 13-02025 (Doc.'s 12, 12-6) and 18-00009 (Doc.'s 58, 58-1).

c.    **Defendants' Continued Servicing Misconduct Related to "NTC"/"Bryan Bly".**

52.    Mass Tort Plaintiffs aver that, after (and despite) entry of the Ocwen and PHH Consent Judgments by this Court in Civil Action No.'s 13-02025 (Doc.'s 12, 12-6) and 18-00009 (Doc.'s 58, 58-1), respectively, in the course of the Defendants' mortgage servicing activities,

Ocwen and PHH willfully (and wantonly) continued to engage in unfair, deceptive, and unlawful mortgage servicing and foreclosure processes against the Mass Tort Plaintiffs through Defendants' continued use of misrepresentations of fact, false claims, forged and falsely notarized documents, related to purported assignments created by Nationwide Title Clearing ("NTC"), displaying the name and admitted forged signature of NTC's employee Bryan Bly ("Mr. Bly").

53.     Attached hereto as **Exhibit E** is a copy of the deposition of Mr. Bly on July 2, 2010 in Deutsche Bank Nat'l Tr. Co. v. Hannah, No. 2009-CA-1920 (Fla. Cir. Ct. July 2, 2010), admitting that, at all times relevant to the dates set forth within "assignment" instrument created by NTC and displaying Mr. Bly's name and purported signatures as an alleged officer for "bank"/ "mortgage" related entities named therein as "assignors",: (i) Mr. Bly was only employed by NTC and was never employed by any of the purported assignors named within purported "assignment" instruments (Id. at 23-27); (ii) a stamp of his signature was created by NTC, and used by others whose names Mr. Bly was not aware, to create purported "assignment" instruments displaying notarizations done outside of his presence, and Mr. Bly's purported name/signature as a purported officer of a "bank"/ "mortgage" related entities, which he signed (Id. at 34-39; and (iii) he had no personal knowledge about the contents set forth within purported "assignment" instruments created by NTC and displaying his purported signatures (Id. at 39-40).

54.     Attached hereto as **Exhibit E1** is a copy of the December 20, 2010 Administrative Order 01-2010 entered by the Superior Court of New Jersey in In The Matter Of Residential Mortgage Foreclosure Pleading And Document Irregularities (Doc. No. F-238-11), addressing illegal residential mortgage foreclosure proceedings and Mr. Bly's deposition, by stating: "An individual employed by Nationwide Title Clearing, Inc., with signing authority for Citi Residential Lending, Inc., testified in a deposition that when he signed documents for Citi, he did not review

them for substantive correctness.  Indeed, he could not even explain what precisely an assignment of mortgage accomplishes He had no prior background in the mortgage industry.") (*footnotes omitted* (Id. p. 7).

55.    Mass Tort Plaintiffs aver that, in the course of the Defendants' mortgage servicing activities, Ocwen and PHH willfully (and wantonly) created, authenticated, and/or trafficked pleadings and documents consisting of false statements/claims related to the alleged signature of Bryan Bly appearing on "assignment" instruments create by NTC, resulting in continued premature and unauthorized foreclosures, continued violation of Mass Tort Plaintiffs' rights and protections, and the continued use of false and deceptive affidavits and other documents, as displayed within the forged/falsely notarized "assignment" instruments created by NTC and displaying the forged signature of Mr. Bly impersonating an officer of the "assignor" named within the instruments enclosed hereto in **Exhibit E2**, resulting in the seizure of real property from (i) Mass Tort Plaintiff Ms. Palumbo in the year 2019; and (ii) Defendants are presently threatening to commence foreclosure proceedings to seize real property owned by Mass Tort Plaintiff Ms. Jennings.

**See Exhibit 2, for the forged/falsely notarized "assignment" instruments created by NTC, displaying the name and forged signature of NTC employee Bryan Bly, presented/trafficked/used by Ocwen and PHH in the course of the Defendants' servicing and foreclosure activities, against Mass Tort Plaintiffs Ms. Palumbo and Ms. Jennings:**



56.    Mass Tort Plaintiffs further aver, upon information and belief, that the foregoing

instance of Ocwen's and PHH's continued engagement in unfair, deceptive, and unlawful practices related to false claims regarding purported assignment instrument created by NTC and displaying the admitted forged name of Bryan Bly, after (and despite) entering into the Ocwen and PHH Consent Judgments by this Court in Civil Action No.'s 13-02025 (Doc.'s 12, 12-6) and 18-00009 (Doc.'s 58, 58-1), was also done (and is presently being done) to consumers/citizens in D.C. who are similarly situated as the Mass Tort Plaintiffs.

### d. Defendants' Continued Servicing Misconduct Related to American Home Mortgage Servicing, Option One Mortgage Corporation, and Sand Canyon Corporation.

57.    Mass Tort Plaintiffs aver that, in the course of the Defendants' mortgage servicing activities, Ocwen and PHH willfully (and wantonly) continued to engage in unfair, deceptive, and unlawful mortgage servicing and foreclosure processes against the Mass Tort Plaintiffs through Defendants' continued use of misrepresentations of fact, false claims, forged and falsely notarized documents, related to purported assignments naming American Home Mortgage Servicing Inc. ("AHMS"), Option One Mortgage Corporation ("Option One"), and Sand Canyon Corporation ("Sand Canyon") as purported "assignors" and/or "assignees" of residential mortgage loans on dates after (and contradictory of) the March 18, 2009 declaration of Dale M. Sugimoto ("Mr. Sugimoto") as the President of Sand Canyon that was filed with the United States Bankruptcy Court for the Eastern District of Louisiana in In Re Ron Wilson, Sr. et al., (Case No. 07-11862 (EWM)), the latter of which is enclosed hereto as **Exhibit F**, wherein the affiant as president for Sand Canyon declared, in relevant part,: (i) at ¶2, that effective April 30, 2008, Option One mortgage loan servicing business was sold to American Home Mortgage Servicing, Inc. ("AHMS"), the latter of whom who changed Option One's name to Sand Canyon; (ii) at ¶5, Sand Canyon was no longer engaged in the servicing of residential mortgage loans and had no servicing

rights: and (iii) at ¶6, that Sand Canyon had no ownership of any residential mortgages.

58.    Mass Tort Plaintiffs aver that, in the course of the Defendants' mortgage servicing activities, Ocwen and PHH willfully (and wantonly) created, authenticated, and/or trafficked pleadings and documents consisting of false statements/claims related to Option One and/or Sand Canyon, resulting in continued premature and unauthorized foreclosures, continued violation of Mass Tort Plaintiffs' rights and protections, and the continued use of false and deceptive affidavits and other documents, as displayed within the forged/falsely notarized "assignment" instruments enclosed hereto in **Exhibit F1**, resulting in the seizure of real property from (i) Ms. Palumbo in the year 2019; and (ii) Mr. Taylor in 2017, (iii) along with a similarly situated consumer/citizen in the State of New Jersey under Docket No. F-9977-19 in the year 2023; and (iv) Defendants are presently attempting to seize real property owned by Mass Tort Plaintiff Mr. Twardy with a Sheriff's Sale scheduled by Defendants for April 11, 2024, causing Mr. Twardy to file a chapter 13 bankruptcy petition for stay protection to prevent the attempted unlawful seizure by Defendants.

**See Exhibit F, for the relevant statements from the declaration by Sand Canyon's president, submitted to the bankruptcy court on March 19, 2009:**

5.    Accordingly, Sand Canyon is no longer engaged in the servicing of residential mortgage loans. Sand Canyon has no servicing rights.

6.    Sand Canyon also does not own any residential real estate mortgages.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: March 18, 2009

By: _____
Dale M. Sugimoto
President of Sand Canyon Corporation

**See Exhibit F1, for six Forged/Falsely Notarized "assignment" instruments trafficked/presented by Defendants in the course of their servicing and foreclosure processes, falsely claiming assignments to and/or by Option One and Sand Canyon, well after the March 19, 2009 declaration by Sand Canyon's president:**

IN WITNESS WHEREOF, the said Assignor, has hereunto set his hand caused there presents to be signed by its proper corporate offices and its corpora hereto affixed this _7_ day of _March_ 20_12_.

Signed, Sealed and Delivered in The Presence of or Attested By

Vicki Patton

_Tonya H_ Tonya Hop

Sand Canyon Corporation f/k/a Option One M Corporation

Dated: 01/03/2012
Sand Canyon Corporation f/k/a Option One Mortgage Corporation

DERRICK WHITE          VICE PRESIDENT

---

In all references herein to any parties, persons, entities or corporations the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.

IN WITNESS WHEREOF, the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed this _8_ day of _January_ 20_11_.

Signed, Sealed and Delivered
in the presence of or
attested by

SIGNER 1

(Signature w/ seal)
**Mandy Brandon**
Print Name & Title
**Assistant Secretary**

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR, CITIGROUP MORTGAGE LOAN TRUST INC. ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-AMC1, UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF SEPTEMBER 1, 2006 BY AMERICAN HOME MORTGAGE SERVICING, INC., AS ATTORNEY IN FACT

SIGNER 2

(Signature)
**Joseph Kaminski**          Assistant Secretary
Print Name & Title

---

In Witness Whereof, the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed this _20th_ day of _May_, 2014

Signed, Sealed and Delivered
in the presence of or Attested by

Witnessed by:          Jason R. Berkeley
Title: Assistant Secretary

**SAND CANYON CORPORATION FKA OPTION ONE MORTGAGE CORPORATION**

Name:          Jason Ayers
Title:          Assistant Secretary

---

SEE ATTACHED LEGAL DESCRIPTION
and recorded in the official records of the County of Monmouth, State of New Jersey affecting Real Property and more particularly described on said Mortgage referred to herein.
IN WITNESS WHEREOF, the undersigned has caused these presents to be executed on this date of 10/27/2009.

Sand Canyon Corporation formerly known as Option One Mortgage Corporation

RE FRENCH, CTY CLK
JTH COUNTY, NJ
'RUMENT NUMBER
9123069

Shelly Scheffey
Vice President



59.     Mass Tort Plaintiffs further aver, upon information and belief, that in the course of the Defendants' mortgage servicing activities in this District (and interstate), the Defendants willfully (and wantonly) created, authenticated, and/or trafficked pleadings and documents consisting of false statements/claims related to AHMS, Option One, and/or Sand Canyon, resulting in continued premature and unauthorized foreclosures, continued violation of the rights and protections for persons in D.C., after (and despite) entering into the Ocwen and PHH Consent Judgments by this Court in Civil Action No.'s 13-02025 (Doc.'s 12, 12-6) and 18-00009 (Doc.'s 58, 58-1).

### e.  **Defendants' Continued Servicing Misconduct Related to Consumer Complaints filed with the Bureau.**

60.     Mass Tort Plaintiffs aver that, after (and despite) entry of the Ocwen and PHH Consent Judgments entered by this Court in Civil Action No.'s 13-02025 (Doc.'s 12, 12-6) and 18-00009 (Doc.'s 58, 58-1), in the course of the Defendants' mortgage servicing activities, Ocwen and PHH willfully (and wantonly) engaged in unfair and deceptive practices by providing false statement when responding to Mass Tort Plaintiffs' complaints filed with the CFPB, along with submitting forged and//or falsely notarized documents to the Bureau, as demonstrated within Defendants' replies to recent complaints filed by Ms. Rogers and Mr. Owens (*See* CFPB case numbers 231222-12830907; 231222-12832464; 231222-12832374; and 231222-12832562); and

demonstrated within other responses to complaints filed with the Bureau by other Mass Tort Plaintiffs after entry of the Ocwen and PHH Consent Judgments by this Court.

61.    Mass Tort Plaintiffs further aver, upon information and belief, that the foregoing instance of Ocwen's and PHH's systemic engagement in unfair and deceptive practices when responding to Mass Tort Plaintiffs' complaints filed with the CFPB, by willfully (and wantonly) submitting false statements, forged and//or falsely notarized documents to the Bureau, after (and despite) the Ocwen and PHH Consent Judgments entered by this Court, was also done (and is presently being done) to consumers/citizens in D.C. who are similarly situated as the Mass Tort Plaintiffs.

**f.    Defendants' Continued Servicing Misconduct Related to Unlawful Entrances and Lockouts.**

63.    Mass Tort Plaintiff Mr. Twardy, whose allegations of continued servicing and foreclosure misconduct by Defendants is set forth above in paragraphs ¶¶34(a), 35-40, and 57-59, of which includes Ocwen's and PHH's continued use of misrepresentations of fact, false claims, forged and falsely notarized documents, related to purported assignments created by the criminally implicated DocX (*See* **Exhibits C – C3**), in an attempt to unlawfully seize Mr. Twardy's real property, also includes Ocwen's unlawful entrance, burglary, and lockout in 2018, followed by the Defendants' attempted unlawful entrance in 2020.

64.    Between July 4, 2018 – July 5, 2018, while Mr. Twardy maintained ownership of the property subject of Ocwen's foreclosure action that remained pending, Plaintiff returned to his home in New Jersey and discovered that agents employed (and directed) by Ocwen, unlawfully entered Mr. Twardy's home and proceeded by stealing money, carpet, medical equipment, and other valuable/sentimental items stored therein; and further proceeded by changing the door locks to restrict Mr. Twardy's access to his home, evidence of which exist on video that Mass Tort

Plaintiffs are preparing for submission to this Court. Mr. Twardy, stunned and outraged by the foregoing discoveries, proceeded by calling the police, and upon the arrival of a New Jersey State Trooper, regained access to his home by breaking the locks that Ocwen unlawfully installed. Enclosed hereto at https://youtu.be/_C5Pe1wpO8A[1] (last checked 04/14/2024) is video evidence taken by Mass Tort Plaintiff Mr. Twardy and his on July 5, 2018, upon discovering the break-in/lockout and burglary of Mr. Twardy's home in the course of the Defendants' mortgage servicing activities.

**Images of the destruction from Ocwen's unlawful entrance, burglary, and lockout between July 4, 2018 – July 5, 2024, against Mass Tort Plaintiff Mr. Twardy:**

   

65.    On April 5, 2020, while sleeping inside of his home, Mr. Twardy was awakened by agents employed (and directed) by the Defendants, attempting to break into Plaintiff's home (again), at which time, Mr. Twardy maintained ownership of the property subject of Ocwen's and PHH's foreclosure action that remained pending, and Plaintiff was battling flu/COVID like symptoms at the time of Defendants' attempted unlawful burglary. Immediately, Mr. Twardy called the police to report the attempted unlawful entrance by vendors hired by the Defendants on April 5, 2020, and was subjected to threats by three New Jersey State Police who, upon arriving at Plaintiff's home, were tricked by agents hired by Ocwen and PHH into believing the Defendants

---

[1] **WARNING:** Contains graphic language use by a New Jersey State Trooper at minute marks: (i) 8:17; (ii) 8:32; (iii) 10:32; and (iv) 10:47.

owned Mr. Twardy's real property as displayed within video evidence enclosed hereto at https://youtu.be/_C5Pe1wpO8A[2] (last checked 04/18/2024), when (at all relevant times) Mr. Twardy maintained ownership of the property subject of Ocwen's and PHH's foreclosure action that remained pending due to Defendants' continued servicing and foreclosure misconduct as set forth above in paragraphs ¶¶34(a), 35-40, and 57-59.

66.     Mass Tort Plaintiffs further aver, upon information and belief, that the foregoing instances wherein Ocwen, without ownership/title to real property or without a court order, unlawfully entered; burglarized; and locked Mass Tort Plaintiff Mr. Twardy from his home in 2018; and Defendants unlawfully attempted to enter again in 2020, after (and despite) the Ocwen and PHH Consent Judgments entered by this Court, was also done (and is presently being done) to consumers/citizens in D.C. who are similarly situated as the Mass Tort Plaintiffs.

**COUNT I**
**CONTINUED VIOLATIONS OF STATE LAW PROHIBITING**
**UNFAIR AND DECEPTIVE CONSUMER PRACTICES**
**WITH RESPECT TO LOAN SERVICING**

67.     The allegations in paragraphs 1 through 66 above are incorporated herein by reference.

68.     The continued loan servicing conduct of Ocwen and PHH, as described above, after (and despite) entry of consent judgments in this Court under Civil Action No.'s 13-02025 and 18-00009, constitutes continued engagement in unfair or deceptive practices in violation of the consumer protection laws of each State for the Mass Tort Plaintiffs and similarly situated consumers/citizens (in this District and interstate).

69.     Ocwen's and PHH's continued unlawful conduct has resulted in injury to the Mass

---

[2] **WARNING:** Contains graphic language use by a New Jersey State Trooper at minute marks: (i) 8:17; (ii) 8:32; (iii) 10:32; and (iv) 10:47.

Tort Plaintiffs and similarly situated consumers/citizens (in this District and interstate) who have had home loans serviced by said Defendants. The harm sustained by such citizens includes payment of improper fees and charges; misapplication of payments; dual tracking activity; loss of homes due to improper, unlawful, or undocumented foreclosures; and the subversion of legal process and the sustained violations of laws in each State for the Mass Tort Plaintiffs and similarly situated consumers/citizens (in this District and interstate). The Mass Tort Plaintiffs have had to incur substantial expenses in the investigations and attempts to obtain remedies for Ocwen's and PHH's unlawful conduct.

**COUNT II**
**CONTINUED VIOLATIONS OF STATE LAW PROHIBITING**
**UNFAIR AND DECEPTIVE CONSUMER PRACTICES**
**WITH RESPECT TO FORECLOSURE PROCESSING**

70.     The allegations in paragraphs 1 through 66 above are incorporated herein by reference.

71.     The continued foreclosure processing conduct of Ocwen and PHH, as described above, after (and despite) entry of consent judgments in this Court under Civil Action No.'s 13-02025 and 18-00009, constitutes unfair or deceptive practices in violation of the consumer protection laws of each State for the Mass Tort Plaintiffs and similarly situated consumers/citizens (in this District and interstate).

72.     Ocwen's and PHH's continued unlawful conduct has resulted in injury to the Mass Tort Plaintiffs and similarly situated consumers/citizens (in this District and interstate) who have had home loans serviced by said Defendants. The harm sustained by such citizens includes payment of improper fees and charges; misapplication of payments; dual tracking activity; loss of homes due to improper, unlawful, or undocumented foreclosures; and the subversion of legal process and the sustained violations of laws in each State for the Mass Tort Plaintiffs and similarly

## COUNT III
### CONTINUED VIOLATIONS OF THE CONSUMER FINANCIAL PROTECTION ACT OF 2010, 12 U.S.C. § 5481 ET SEQ. (CFPA) WITH RESPECT TO LOAN SERVICING

73.     The allegations in paragraphs 1 through 66 above are incorporated herein by reference.

74.     The loan servicing conduct of Ocwen and PHH, as described above, constitutes unfair and deceptive acts or practices in violation of 12 U.S.C. §§ 5531(a) and 5536.

## COUNT IV
### CONTINUED VIOLATIONS OF THE CONSUMER FINANCIAL PROTECTION ACT OF 2010, 12 U.S.C. § 5481 ET SEQ. (CFPA) WITH RESPECT TO FORECLOSURE PROCESSING

75.     The allegations in paragraphs 1 through 66 above are incorporated herein by reference.

76.     The foreclosure processing conduct of PHH, as described above, constitutes unfair and deceptive acts or practices in violation of 12 U.S.C. §§ 5531(a) and 5536.

## COUNT V
### CIVIL CONTEMPT OF CONSENT JUDGMENTS

77.     The allegations in paragraphs 1 through 66 above are incorporated herein by reference.

78.     Ocwen and PHH: (i) failed to identify the Mass Tort Plaintiffs (and similarly situated consumers/citizens in this District and interstate) and remediate injuries caused to said consumers as required by the consent judgments entered in this Court under Civil Action No.'s 13-02025 and 18-00009; (ii) continued to engage in unfair, deceptive, and unlawful conduct after (and

situated consumers/citizens (in this District and interstate). The Mass Tort Plaintiffs have had to

incur substantial expenses in the investigations and attempts to obtain remedies for Ocwen's and

despite entry of) said consent judgments prohibiting such conduct, constitutes civil contempt of the consent judgments entered by this Court against Ocwen and PHH in Civil Action No.'s 13-02025 and 18-00009, respectively.

79.    Ocwen's and PHH's civil contempt has caused injury to the Mass Tort Plaintiffs (and similarly situated consumers/citizens in this District and interstate) includes payment of improper fees and charges; misapplication of payments; dual tracking activity; loss of homes due to improper, unlawful, or undocumented foreclosures; and the subversion of legal process and the sustained violations of laws in each State for the Mass Tort Plaintiffs and similarly situated consumers/citizens (in this District and interstate). The Mass Tort Plaintiffs have had to incur substantial expenses in the investigations and attempts to obtain remedies for Ocwen's and PHH's unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, the Mass Tort Plaintiffs in their respective individual capacities, pursuant to the consumer protection laws of their States; D.C. named a plaintiff herein as a required party pursuant to Fed. R. Civ. P. 19, pursuant to the consumer protection laws of their State; and the Bureau named a plaintiff herein as a required party pursuant to Fed. R. Civ. P. 19, pursuant to Sections 1054 and 1055 of the CFPA, 12 U.S.C. §§ 5564 and 5565, and respectfully request that judgment be entered in their favor and against Ocwen and PHH for each violation charged in the complaint, and request that the Court:

A. Permanently enjoin Ocwen and PHH from committing future violations.;

B. For Count One and Count Two, award each of the Mass Tort Plaintiffs in their respective individual capacities (and similarly situated consumers/citizens) with

$1,000,000 each violation recited above in paragraphs 26 and 29; and $5,000,000 each occurrence, as punitive damages to redress injury to individual consumers.;

C. For Count Three and Count Four, award such relief as the Court finds necessary to redress injury to consumers, and to disgorge Ocwen and PHH of unlawful gains.;

D. For Count Five, $5,000,000,000 in punitive damages against Ocwen and PHH, ordering the award be distributed as follows: (i) 25% to be equally divided amongst the Mass Tort Plaintiffs; (ii) 25% to be equally distributed amongst several law schools and consumer advocacy organizations to train and equip professionals to assist and advocate for consumers/citizens who are similarly situated as the Mass Tort Plaintiffs; (iii) 25% to be disbursed to the Bureau, should the latter agree to joinder as a required party pursuant to Fed. R. Civ. P.; and (iv) 25% to be disbursed to D.C. should the latter agree to joinder as a required party pursuant to Fed. R. Civ. P. 19.;

E. Award other relief as the Court finds necessary to disgorge Ocwen and PHH of unlawful gains.;

F. Award the Mass Tort Plaintiffs the costs of bringing this action.; and

G. Award additional relief as the Court may determine to be just and proper.

## EQUITABLE TOLLING

Mass Tort Plaintiffs invoke equitable tolling to preserve any and all claims set forth herein because: (i) the Mass Tort Plaintiffs were not aware and recently discovered the Ocwen and PHH Consent Judgments entered in this Court, required the Defendants to identify the Mass Tort Plaintiffs and remediate injuries sustained; (ii) Ocwen and PHH never identified the Mass Tort Plaintiffs to remediate injuries sustained and (iii) the conduct subject of the Ocwen and PHH Consent Judgments and complained of herein, is continuous.

$1,000,000 each violation recited above in paragraphs 26 and 29; and $5,000,000 each occurrence, as punitive damages to redress injury to individual consumers.;

C.  For Count Three and Count Four, award such relief as the Court finds necessary to redress injury to consumers, and to disgorge Ocwen and PHH of unlawful gains.;

D.  For Count Five, $5,000,000,000 in punitive damages against Ocwen and PHH, ordering the award be distributed as follows: (i) 25% to be equally divided amongst the Mass Tort Plaintiffs; (ii) 25% to be equally distributed amongst several law schools and consumer advocacy organizations to train and equip professionals to assist and advocate for consumers/citizens who are similarly situated as the Mass Tort Plaintiffs; (iii) 25% to be disbursed to the Bureau, should the latter agree to joinder as a required party pursuant to Fed. R. Civ. P.; and (iv) 25% to be disbursed to D.C. should the latter agree to joinder as a required party pursuant to Fed. R. Civ. P. 19.;

E.  Award other relief as the Court finds necessary to disgorge Ocwen and PHH of unlawful gains.;

F.  Award the Mass Tort Plaintiffs the costs of bringing this action.; and

G.  Award additional relief as the Court may determine to be just and proper.

## EQUITABLE TOLLING

Mass Tort Plaintiffs invoke equitable tolling to preserve any and all claims set forth herein because: (i) the Mass Tort Plaintiffs were not aware and recently discovered the Ocwen and PHH Consent Judgments entered in this Court, required the Defendants to identify the Mass Tort Plaintiffs and remediate injuries sustained; (ii) Ocwen and PHH never identified the Mass Tort Plaintiffs to remediate injuries sustained and (iii) the conduct subject of the Ocwen and PHH Consent Judgments and complained of herein, is continuous.

## RIGHTS RESERVED

Mass Tort Plaintiffs hereby reserve their respective rights as it pertains to any possible claims and causes of action against the Defendants named in the above-captioned complaint and third parties not named herein.

Dated: 4/19/24

_____
Francis Twardy
2257 North Firelane Road,
Southampton NJ 08088
Tel: 609-234-0777
Email: franwt31@yahoo.com
*Plaintiff (Pro Se)*

Dated: 4-19-2024

_____
Clarence E. Owens
P.O. Box 123
Willingboro, NJ 08046
Tel: 609-686-0557
Email: clayowenslfg@gmail.com
*Plaintiff (Pro Se)*

Dated: 4-2074

_____
Frances Rogers
2401 Acron Drive,
Killeen, Texas 76543
Email: justice4tfrogers@gmail.com
*Plaintiff (Pro Se)*

48

Dated: 4/20/2024

Yvette Labossiere
628 W. Front St.
Florence, NJ 08518
Tel: 856-209-8924
Email: amomperousse@gmail.com
*Plaintiff (Pro Se)*

Dated: April 2a2024

Anthony Momperousse
628 W. Front St.
Florence, NJ 08518
Tel: 856-209-8924
Email: amomperousse@gmail.com
*Plaintiff (Pro Se)*

Dated: April 20, 2024

Jeanne Palumbo
1701 Woodhollow Drive
Marlton, NJ 08053
Tel: 856-905-4612
Email: jean.palumbo@gmail.com
*Plaintiff (Pro Se)*

Dated: 4/19/24

Celeste Payne
P.O. Box 4755
Cherry Hill, NJ 08034
Tel: 856-495-8872
Email: Celestepayne@live.com
*Plaintiff (Pro Se)*

49

Dated: 4-19-24

_____
Alvin Francis
4505 North Uber Street
Philadelphia, PA 19140
Tel: 215-617-6525
*Plaintiff (Pro Se)*


Dated: 04|19|24

_____
Marsha Francis
4505 North Uber Street
Philadelphia, PA 19140
Tel: 215-617-6525
Email: marsha9896@gmail.com
*Plaintiff (Pro Se)*


Dated: 4/20/2024

_____
Thomas M. Taylor
1028 Cooper Street,
Edgewater Park, NJ 08010
Tel: 640-650-1010
Email: ttaylor742@aol.com


Dated:
4-20-2024

_____
Jacqueline Jennings
169 Club House Drive
Willingboro, NJ 08046
Tel: 609-868-0871
Email: akajacqueline@yahoo.com
*Plaintiff (Pro Se)*

Dated: 4-20-24

George White Jr.
4522 Forrest Ave.
Pennsauken, NJ 08110
Tel: 609-352-2020
Email: gwhite4000@aol.com
*Plaintiff (Pro Se)*