# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

FRANCIS TWARDY, *et al.*,

       *Plaintiffs*,

   v.

OCWEN FINANCIAL CORPORATION, *et al.*,

       *Defendants*.

Civil Action No. 24‑1200 (SLS)

Judge Sparkle L. Sooknanan

## <u>MEMORANDUM OPINION</u>

The Plaintiffs in this case are all homeowners in New Jersey who have been subject to state court foreclosure proceedings. Some of them have previously brought lawsuits in the District of New Jersey challenging their foreclosure proceedings. In this action, they seek relief from their residential mortgage servicers, Ocwen Financial Corporation, Ocwen Loan Servicing LLC, and PHH Mortgage Corporation, for unfair, deceptive, and unlawful practices. They allege that the Defendants' loan servicing practices and foreclosure processes violated various state consumer protection laws and the Consumer Financial Protection Act of 2010. They also allege that the Defendants violated prior consent judgments entered by this Court in civil actions initiated by the Consumer Financial Protection Bureau (CFPB) and certain state attorneys general in 2013 and 2018. The Plaintiffs were not parties to those prior consent judgments.

The Plaintiffs have moved for preliminary injunctive relief, and the Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6). The Court is troubled by the allegations that gave rise to the prior consent judgments, including rampant misconduct by these very mortgage service providers that resulted in premature and

unauthorized foreclosures. But these individual Plaintiffs have no authority to enforce the prior consent judgments, and the remaining claims are not properly before this Court. For the reasons set forth below, the Court dismisses the federal claims and the consent-judgment claims under Rule 12(b)(6) with prejudice, and it dismisses the state law claims under Rule 12(b)(1) without prejudice.

## FACTUAL BACKGROUND

The Court draws the facts, accepted as true, from the Plaintiff's Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). The Court also takes "judicial notice of public records from other court proceedings." *Lewis v. Drug Enforcement Admin.*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011).

The events at the heart of this case began twelve years ago, when the CFPB and almost every state attorney general sued Ocwen Financial Corporation and Ocwen Loan Servicing LLC (collectively, Ocwen), which functioned together as a mortgage servicer, alleging fraudulent activity. *See* Compl. ¶ 26, ECF No. 1; *id.*, Ex. A, ECF No. 1-1. They accused Ocwen of failing to accurately apply payments made by borrowers, charging unauthorized fees for default-related services, misrepresenting to borrowers that loss mitigation programs would provide relief from the initiation of foreclosure, and filing false and misleading documents with courts and government agencies throughout the foreclosure process, among other things. Compl. ¶ 26. Within two months, the parties agreed to a consent judgment requiring Ocwen to pay roughly one hundred twenty-seven million dollars to a fund for certain foreclosed borrowers, to pay up to two billion dollars to certain consumers, and to refrain from certain practices for three years. *See id.* ¶ 27; *id.*, Ex. A1, ECF No. 1-1.

About four years later, in 2018, a new slate of state attorneys general filed a similar complaint against PHH Mortgage Corporation (PHH), another mortgage servicer. *See* Compl. ¶ 29; *id.*, Ex. B, ECF No. 1-1. This complaint accused PHH of many of the same fraudulent activities as Ocwen, including filing false and misleading documents with courts and agencies throughout foreclosure proceedings, in addition to new misconduct, like failing to properly oversee third-party vendors throughout foreclosure operations. *See* Compl. ¶ 29. After about five months of litigation, the parties agreed to a consent judgment mandating PHH to pay over forty-five million dollars that would be distributed in part to foreclosed borrowers and to avoid engaging in similar conduct for three years. *See id.* ¶¶ 30–31; *id.*, Ex. B1, ECF No. 1-1.

That brings us to the case now before this Court. In August 2024, twelve individual Plaintiffs proceeding pro se sued their residential mortgage servicers—Ocwen and PHH— accusing them of violating the terms of the prior consent judgments and of continuing to engage in unfair, deceptive, and unlawful practices.[1] *Id.* ¶¶ 1–2. Counts 1 and 2 of the Complaint allege that the Defendants' loan servicing practices and foreclosure processes violated various state consumer protection laws. *Id.* ¶¶ 67–72. Counts 3 and 4 allege that those same practices and processes violated the Consumer Financial Protection Act of 2010. *Id.* ¶¶ 73–76 (citing 12 U.S.C. §§ 5531, 5536). And Count 5 alleges that the Defendants violated their consent judgments by continuing to engage in unfair, deceptive, and unlawful conduct, and more specifically, by failing

---

[1] The Plaintiffs are Francis Twardy, Clarence E. Owens, Frances Rogers, Yvette Labossiere, Anthony Momperousse, Jeanne Palumbo, Celeste Payne, Alvin Francis, Marsha Francis, Thomas M. Taylor, Jacqueline Jennings, and George White, Jr.

to identify the Plaintiffs and remediate their injuries, as was required by the consent judgments. *Id.* ¶¶ 77–79. None of the Plaintiffs were parties to the prior consent judgments.[2]

Some of the allegations in the Complaint are broad and concern most, if not all, of the Plaintiffs. Others are narrow and concern only a few of the Plaintiffs at a time.

All of the Plaintiffs claim that at least one of the Defendants unlawfully commenced foreclosure proceedings against them by presenting false and misleading documents with the state court and other governmental agencies, by filing affidavits in foreclosure proceedings where the affiant lacked personal knowledge, by failing to properly oversee third-party vendors retained for mortgage servicing and foreclosure operations, and by failing to maintain adequate documentation to determine whether they had standing to initiate foreclosure in the first place. *See* ¶ 34. And many of the Plaintiffs also claim that at least one of the Defendants charged unauthorized fees for default-related services while also providing false or misleading information in response to the Plaintiffs' complaints. *See id.*

But some of the Plaintiffs also bring more specific claims. First, the Complaint alleges that the Defendants used falsely notarized documents created by a firm called DocX, pointing to an admission by an executive at DocX in a criminal case that she had helped create more than one million forged and falsely notarized instruments. *Id.* ¶ 35. This resulted in the seizure of Ms. Palumbo's property and an ongoing attempt at the time of filing to seize Mr. Twardy's property. *Id.* ¶ 39.

---

[2] The Defendants have initiated foreclosure proceedings in state court against all of the Plaintiffs, some of which are still pending. Compl. ¶ 3. And some of the Plaintiffs have brought separate actions in the District of New Jersey to challenge the foreclosure proceedings. *See* Defs.' Mot. to Dismiss at 3–8, ECF No. 6. In those cases, the Plaintiffs have argued that the mortgage servicers lacked standing to foreclose and that certain documents were forged or otherwise fraudulent. *See id.*

Second, the Complaint alleges that the Defendants created and used forged and falsely notarized assignment instruments designating Mortgage Electronic Registration Systems, Inc. (MERS) as the assignor, pointing to a series of civil cases calling into question MERS's assignment capacity in New Jersey. *See id.* ¶¶ 41–46. This resulted in the seizure of property belonging to the Momperousses, Ms. Payne, and the Francises, as well as an ongoing attempt at the time of filing to seize property belonging to Mr. Owens and Mr. White. *Id.* ¶ 47. The Plaintiffs also claim that the MERS officer's signature on certain assignment instruments does not match the signature on record with the Florida Department of State. *Id.*

Third, the Complaint alleges that the Defendants used forged and falsely notarized documents related to purported assignments created by Nationwide Title Clearing (NTC) displaying the name and forged signature of Bryan Bly. *Id.* ¶ 52. According to the Plaintiffs, Mr. Bly was never employed by any of the assignors named in the assignment instruments; Mr. Bly's signature was turned into a stamp to be used by others; and Mr. Bly had no personal knowledge of the contents set forth in NTC assignment instruments bearing his signature. *Id.* ¶ 53. This resulted in the seizure of Ms. Palumbo's property and threats to commence foreclosure against Ms. Jennings. *Id.* ¶ 55.

Fourth, the Complaint alleges that the Defendants used forged and falsely notarized documents related to purported assignments naming Sand Canyon Corporation and its predecessors as the assignor after Sand Canyon's president declared in an affidavit that Sand Canyon was no longer servicing residential mortgage loans. *Id.* ¶ 57. This resulted in the seizure of property belonging to Ms. Palumbo and Mr. Taylor. *Id.* ¶ 58. It also resulted in an ongoing attempt at the time of filing to seize Mr. Twardy's property. *Id.*

Fifth, the Complaint alleges that Ocwen, working through its agents, unlawfully entered or attempted to enter Mr. Twardy's home two different times. *Id.* ¶ 63. The first time was in 2018. *Id.* While a foreclosure action was pending, Mr. Twardy came home and discovered that agents had unlawfully entered his home and stolen "money, carpet, medical equipment, and other valuable/sentimental items." *Id.* ¶ 64. The agents also changed the door locks to restrict Mr. Twardy's access to his home. *Id.* Mr. Twardy only regained access to his home after a New Jersey State Trooper arrived and Mr. Twardy broke the locks. *Id.* The second time was in 2020. *Id.* ¶ 63. While foreclosure proceedings were still pending, and while Mr. Twardy was sleeping inside of his home battling COVID-like symptoms, Ocwen's agents attempted to break into his home again. *Id.* ¶ 65. Both instances occurred while Mr. Twardy still owned the property. *See id.* ¶¶ 63–66.

The Complaint also lists the CFPB and the District of Columbia as Plaintiffs. *Id.* ¶¶ 4–5. Although these entities have not made an appearance in this case, the Complaint says that they were joined as required parties under Federal Rule of Civil Procedure 19. *Id.* ¶ 5. And it alleges that District of Columbia citizens have suffered many of the same harms described above. *See id.* ¶¶ 32, 34, 40, 51, 56, 59, 61, 66.

## PROCEDURAL HISTORY

There are three pending motions before this Court. The first is a Motion for Preliminary Injunction seeking "to halt Defendants['] continued engagement in, at a minimum, [their] foreclosure activities that persist to present date against Mr. Twardy; Mr. Owens and Ms. Rogers; Mr. White; and Ms. Jennings," which according to the Plaintiffs would prevent the irreparable harm already suffered by the Momperousses, Ms. Palumbo, Ms. Payne, and Mr. Taylor. Pls.' First Mot. for Prelim. Inj. at 12, ECF No. 4. The second is an additional Motion for Preliminary

Injunction, also filed by the Plaintiffs, largely echoing the arguments from the first one. *Compare* Pls.' Second Mot. for Prelim. Inj., ECF No. 17, *with* Pls.' First Mot. for Prelim. Inj. And the third is a Motion to Dismiss filed by the Defendants seeking dismissal on several grounds, including improper venue, lack of subject matter jurisdiction, failure to state a claim, res judicata, and the *Rooker-Feldman* doctrine. Defs.' Mot. to Dismiss (Defs.' Mot.), ECF No. 6. All three motions are fully briefed.

## DISCUSSION

The Defendants raise several arguments for dismissal under Rules 12(b)(1), 12(b)(3), and 12(b)(6). The Court disagrees with the Defendants on venue, finding that they waived personal jurisdiction and are therefore deemed to be residents of the District of Columbia. But the Court agrees that the Plaintiffs' federal claims and consent-judgment claims should be dismissed for failure to state a claim. And the Court concludes that it lacks subject matter jurisdiction over the remaining state law claims. It therefore dismisses all claims and need not reach the Defendants' alternative bases for dismissal.

### A.    Joinder

As a preliminary matter, the Court first explains why the CFPB and the District of Columbia are not parties to this action. The Complaint lists them as co-plaintiffs joined as required parties under Federal Rule of Civil Procedure 19. *See* Compl. ¶¶ 4–5. But neither meets the definition of a required party for this lawsuit. And even if they were required parties, the individual Plaintiffs have failed to establish that they have the authority to join the CFPB or the District of Columbia as involuntary plaintiffs.

Plaintiffs do not usually "join" parties by listing them on the complaint as co-plaintiffs. Joinder generally occurs "on motion or on the court's initiative" instead. Fed. R. Civ. P. 19,

advisory committee's note to 1966 Amendment; *see, e.g.*, *Vanderkam v. Pension Ben. Guar. Corp.*, 943 F. Supp. 2d 130, 136 (D.D.C. 2013) (motion); *Alemayehu v. Abere*, 298 F. Supp. 3d 157, 173–74 (D.D.C. 2018) (ordering joinder briefing). But since the individual Plaintiffs are proceeding pro se, the Court will treat their statements in the Complaint as a motion to join the CFPB and the District of Columbia under Rule 19. *Cf., e.g.*, *Kaufman v. I.R.S.*, 787 F. Supp. 2d 27, 31 n.4 (D.D.C. 2011) (construing pro se plaintiffs' notices of joinder as motions for joinder); *Hearns v. Gonzales*, No. 14-cv-1177, 2014 WL 4960839, at * 2 (E.D. Cal. Oct. 1, 2014). The motion fails for two reasons.

First, the CFPB and the District of Columbia are not required parties. Federal Rule of Civil Procedure 19(a)(1) lays out two ways that "a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction" can become a required party. *Id.* The first is triggered when "the court cannot accord complete relief among [the] existing parties." *Id.* The second applies when "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *Id.* Neither standard is satisfied here.

The Court can afford complete relief without the CFPB or the District of Columbia. The individual Plaintiffs are seeking money damages and equitable relief to stop their mortgage servicers from engaging in unfair, deceptive, and unlawful practices. *See* Compl., Prayer for Relief. And there is no reason to believe that a judgment against the Defendants would be "hollow" absent the addition of the CFPB or the District of Columbia. 4 Moore's Federal Practice § 19.03 (3d. ed. 2023). This is not a case where the Defendants would be off the hook for money damages,

*see id.* (citing *Prestenback v. Emp'rs Ins. Cos.*, 47 F.R.D. 163, 166–67 (E.D. La. 1969)), or a case where the injunctive relief would require the participation of the absent parties, *see id.* (citing *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1124 (2d Cir. 1990)). It is true that the Court cannot afford relief for the claims arising under the consent judgments without the CFPB or the District of Columbia since the individual Plaintiffs were not parties and therefore lack standing to enforce those judgments on their own. *See infra*, at 19–21. But Rule 19 does not allow a pro se plaintiff to bootstrap a standing problem simply by "joining" an entity with a claim. *Cf. Sopkin v. Lopatto*, No. 22-cv-3300, 2023 WL 5833679, at *8 (D.D.C. Sept. 9, 2023), *aff'd*, No. 23-cv-7115, 2024 WL 251537 (D.C. Cir. Jan. 23, 2024) (disallowing a pro se plaintiff from curing a standing problem by joining an entity). Joinder is not appropriate under this standard.

And the CFPB and the District of Columbia do not claim an interest that would be impaired by their absence or would create a risk of inconsistent obligations. It is hard to see how either of them has "claimed" any interest at all given neither has made an appearance in this case. *Cf. McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 152 (D.D.C. 2014) (concluding its analysis after noting that two previously dismissed defendants did not "claim[] an interest relating to the subject of the action"). But even setting that aside, any generalized interest in consumer protection would be far too broad considering individual plaintiffs routinely bring actions for unfair and deceptive practices without joining the CFPB or the District of Columbia. *See, e.g. Scott v. Apple Inc.*, No. 23-cv-425 2024 WL 4698706 (D.D.C. 2024). And any more particularized interest in the enforcement of the consent judgments lapsed years ago when the Defendants' "obligations to comply . . . expire[d]." Compl. Ex. A1 § VII ¶ 15 (three-year sunset provision); Compl. Ex. B1 § VII ¶ 23 (same). The CFPB and the District of Columbia are not required parties under Federal Rule of Civil Procedure 19(a).

Second, even if they were required parties, the CFPB and the District of Columbia cannot be joined as involuntary plaintiffs in this case. Federal Rule of Civil Procedure 19(a)(2) provides that a required party "who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff." *Id.* Although the Rule does not clarify what counts as a "proper case" for adding an involuntary plaintiff, the advisory committee's note to the original rule cited *Independent Wireless Telegraph Company v. Radio Corp. of America*, 269 U.S. 459 (1926), as an example. *See* Fed. R. Civ. P. 19, advisory committee's note to 1937 rule. There, the Supreme Court held that a patent owner who was outside the jurisdiction of the court and refused to join in an infringement action could be made an involuntary plaintiff by his exclusive licensee because "an implied obligation of the licensor to allow the use of his name is indispensable to the enjoyment by the licensee of the monopoly which by personal contract the licensor has given." *Id.* at 469.

Courts have therefore distilled a few limits on the joinder of an involuntary plaintiff. *See, e.g.*, *Nat'l Org. for the Reform of Marijuana Laws v. U.S. Drug Enf't Admin.*, 545 F. Supp. 981, 982 n.1 (D.D.C. 1982). First, the absent party must be beyond the jurisdiction of the court. *See id.*; *see also State Auto Ins. Cos. v. Whirlpool Corp.*, 62 F. Supp. 3d 857, 867–68 (W.D. Wis. 2014); *Marn v. United States*, 94 F.R.D. 39, 40–41 (W.D. Pa. 1982), *aff'd without opinion*, 838 F.2d 1207 (3d Cir. 1988). Second, the absent party must be notified of the action but refuse to join. *See Nat'l Org. for the Reform of Marijuana Laws*, 545 F. Supp. at 982 n.1; *see also Indep. Wireless Telegraph Co.*, 269 U.S. at 474; *Blumberg v. Gates*, 204 F.R.D. 453, 454 (C.D. Cal. 2001). And third, the absent party must have "a duty to allow [the] plaintiff to use his name in the action." *Caprio v. Wilson*, 513 F.2d 837, 839–40 (9th Cir. 1975); *see also Eikel v. States Marine Lines, Inc.*, 473 F.2d 959, 962 (5th Cir. 1973); *Nat'l Org. for the Reform of Marijuana Laws*, 545 F. Supp. at 982 n.1. Given these limits, the "most typical application" of the

rule allowing involuntary plaintiffs "has been to allow exclusive licensees of patents and copyrights to make the owner of the monopoly an involuntary plaintiff in infringement suits." 7 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1606 (3d ed. 1998).

It appears that the Plaintiffs have attempted to join the CFPB and the District of Columbia as involuntary plaintiffs given that all filings to date "lack signatures by at least one attorney on record on behalf of the CFPB or the D.C. Attorney General pursuant to Fed. R. Civ. P. 11." Defs.' Reply at 2, ECF No. 15. But applying the limits discussed above, the Plaintiffs have failed to establish that the CFPB and the District of Columbia should be joined in this way. It is true that they have notified the CFPB and the District of Columbia of this action. *See* ECF 1-4. But they have failed to show that either of these entities are beyond the jurisdiction of this Court. *See* Defs.' Reply at 3. If anything, they have argued the opposite. *See* Compl. ¶¶ 4–5; Pls.' Opp'n at 24, ECF No. 13. And the Plaintiffs have not shown that they are entitled to use the names of these entities to prosecute this action, as there is no implicit or explicit agreement by which the Plaintiffs gained the right to sue on behalf of the CFPB or the District of Columbia.

The Court therefore denies what it construes as a motion to join the CFPB and the District of Columbia to this case. And to the extent the Complaint should not be read as a motion to join, the Court instead orders the dismissal of the CFPB and the District of Columbia from this action. *See, e.g.*, *Nat'l Org. for the Reform of Marijuana Laws*, 545 F. Supp. at 982 n.1 ("NORML's complaint names [Chevron] as an 'involuntary plaintiff[.]' . . . The company has not, however, participated in these proceedings in any way. . . . The Court, therefore, orders sua sponte the dismissal of Chevron from this action.").

**B.     Venue**

Turning to venue, the Defendants argue that transactional venue does not lie in the District of Columbia since none of the events affecting the individual Plaintiffs took place in the District and none of the property at issue is located in the District. *See* Defs.' Mot. at 12. Although the Defendants are correct that transactional venue lies in the District of New Jersey, residential venue lies in the District of Columbia because the Defendants waived personal jurisdiction by failing to object to it in their responsive pleading.

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss a case for improper venue. "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in [28 U.S.C.] § 1391(b)." *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 56 (2013). Venue is proper in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. 1391(b). These categories "ensure[] that only courts with some interest in the dispute or the parties adjudicate the claims at issue." *Nat'l Women's Pol. Caucus, Inc. v. Metro. Louisville Women's Pol. Caucus, Inc.*, 359 F. Supp. 3d 13, 25 (D.D.C. 2019).

"To prevail on a motion to dismiss for improper venue, . . . the defendant must present facts that will defeat the plaintiff's assertion of venue." *Ananiev v. Wells Fargo Bank, N.A.*, 968 F. Supp. 2d 123, 129 (D.D.C. 2013) (cleaned up). The defendant "must provide sufficient specificity to put the plaintiff on notice of the defect" causing venue to be improper. *Wattleton v. Mnuchin*,

No. 19-cv-1893, 2020 WL 4365487, at *2 (D.D.C. July 30, 2020) (quoting 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3826, at 496 (4th ed. 2013)). But once a "timely and sufficient" objection to venue has been raised, 28 U.S.C. § 1406(b), the "burden . . . remains on the plaintiff to prove that venue is proper." *Aguilar v. Michael & Son Servs., Inc.*, 292 F. Supp. 3d 5, 9 (D.D.C. 2017). This is "[b]ecause it is the plaintiff's obligation to institute the action in a permissible forum." *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011) (cleaned up).

### 1.    Section 1391(b)(2)

The Defendants are correct that venue is improper under Section 1391(b)(2) because none of the Defendants' actions or omissions giving rise to the Plaintiffs' claims occurred in the District of Columbia and none of the property at issue is situated in the District. According to the Complaint, the Plaintiffs own real property in New Jersey, not in the District. *See* Compl. ¶ 3. So when the Complaint alleges that Ocwen or PHH engaged in unfair, deceptive, and unlawful behavior that resulted in the unlawful foreclosure of the Plaintiffs' property, *see, e.g.*, *id.* ¶ 1, 2, 33, 34, 39, 47, 55, 58, the Court infers that the foreclosed property is in New Jersey. And none of the other injuries suffered by the Plaintiffs are alleged to have been caused by actions or omissions in the District of Columbia. *See, e.g.*, *id.* ¶¶ 1, 2, 32, 33, 34, 63–65. The only possible counterexample the Court has identified is an allegation that the Defendants provided false statements when responding to the Plaintiffs' complaints filed with the CFPB, which were presumably filed in the District of Columbia. *See id.* ¶ 60. But this lone causal connection fails to count as "a *substantial* part of the events or omissions giving rise to the claim." 28 U.S.C. 1391(b) (emphasis added).

The Plaintiffs make two main arguments for why transactional venue is proper. First, they argue that their claims seeking to enforce the consent judgments previously issued by this Court arise out of events in the District of Columbia. *See* Compl. ¶ 13. But for reasons explained below, the Plaintiffs lack standing to enforce those judgments, *see infra*, at 19–21, so those claims cannot provide a basis for venue. *See Ananiev*, 968 F. Supp. 2d at 131–32. Second, they argue that citizens of the District have suffered from the same unfair, deceptive, and unlawful behavior underlying their remaining claims. *See* Compl. ¶¶ 13, 34, 40, 51, 56, 59, 61, 66. But for reasons explained above, the District of Columbia is not a party to this action, *see supra*, at 7–11, and these allegations of misbehavior in the District cannot be said to give rise to the individual Plaintiffs' claims.

### 2.    Section 1391(b)(3)

Venue is also improper under Section 1391(b)(3) because there is a "district in which [the] action may otherwise [have been] brought," 28 U.S.C. § 1391(b)(3)—the District of New Jersey. All of the foreclosure events occurred in New Jersey, and all of the property at issue is in New Jersey, *see* Compl. ¶¶ 3, 34, so venue is proper in New Jersey. *See* 28 U.S.C. § 1391(b)(2). The Plaintiffs therefore cannot rely on Section 1391(b)(3) to establish venue.

### 3.    Section 1391(b)(1)

But the venue inquiry does not stop there. Section 1391(b)(1) provides that venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). And entity defendants in single-district states "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c). This ordinarily requires assessing whether a state's long-arm statute and due process allow a court to exercise personal jurisdiction over the defendants. *See, e.g.*, *Cherdak v. Am. Arbitration Assoc.*

14

*Inc.*, 443 F. Supp. 3d 134, 151–52 (D.D.C. 2020). But personal jurisdiction can also be waived by a failure to object to it in responsive pleadings. *See* Fed. R. Civ. P. 12(b)(2). Therefore, "it appears that defendant corporations in single-district States must contest personal jurisdiction in order to dispute residency under 28 U.S.C. § 1391(b)(1)." *Aguilar*, 292 F. Supp. 3d at 11 n.1.

The text and context of Section 1391 confirm this rule. The statutory language requires asking whether a defendant "is subject to the court's personal jurisdiction," including no carve-out for personal jurisdiction established by waiver. 28 U.S.C. § 1391(c)(2). This is particularly striking when compared to previous versions of this statute and different sections of the current statute. The 1988 corporate residency statute provided that "a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction *at the time the action is commenced*." 28 U.S.C.A. § 1391(c), as amended by Act of Nov. 19, 1988, Pub. L. No. 100-702, § 1013, 102 Stat. 4624, 4669 (emphasis added). The clause about timing led many courts to conclude that they had to run "an independent inquiry into whether personal jurisdiction was appropriate at the time the plaintiff filed the lawsuit, not as of the time [the] defendant failed to object to jurisdiction." *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 19 (D.D.C. 2002). Waiver of personal jurisdiction seemed insufficient to establish venue. *See id.*

Congress then amended the corporate residency statute in 2011. *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758. The Act made three relevant changes. First, it extended its residency definition from corporations to all entities with the capacity to sue and be sued. Wright & Miller, 14D Federal Practice and Procedure, § 3811.1. Second, it split the residency definition for entity defendants into two different subsections: one for single-district states, the other for multi-district states. *Id.* And third, it removed the clause about timing from the residency definition for single-district states but kept it

in the residency definition for multi-district states. *Id.* Now courts in multi-district states must ask if they had personal jurisdiction over entity defendants "at the time the action is commenced," and courts in single-district states must ask if they have personal jurisdiction over entity defendants "with respect to the civil action in question." *Compare* 28 U.S.C. § 1391(d), *with id.* § 1391(c)(2). This statutory history suggests that courts in single-district states should assess personal jurisdiction at the time venue is challenged, thereby making a waiver of personal jurisdiction a de facto waiver of venue.

Another court in this District has adopted this reading. *See Aguilar*, 292 F. Supp. 3d at 11 n.1. And other lower courts in single-district states agree. *See Dakota Provisions, LLC v. Hillshire Brands Co.*, 226 F. Supp. 3d 945, 960 n.7 (D.S.D. 2016); *Colombo Candy & Tobacco Wholesale Co. v. Ameristar Casino Council Bluffs, Inc.*, 972 F. Supp. 2d 1103, 1107 (D. Neb. 2013); *see also* Wright & Miller, 14D Federal Practice and Procedure § 3811.1 ("[I]f an entity defendant waives its right to object to personal jurisdiction, it has ipso facto consented to venue under this statute. It is, after all, 'subject to personal jurisdiction with respect to the civil action in question.'"). The only post-amendment cases this Court has found reaching the opposite conclusion come from multi-district states, where the courts were interpreting different text instructing them to assess personal jurisdiction at the time the action was commenced. *See, e.g.*, *Powell v. Monarch Recovery Mgmt., Inc.*, No. 15-cv-2162, 2016 WL 8711210, at *3–5 (E.D.N.Y. Jan. 22, 2016); *Rankel v. Kabateck*, No. 12-cv-216, 2013 WL 7161687, at *3 (S.D.N.Y. Dec. 9, 2013).

Applying this rule to the instant case, the Court concludes that all three Defendants reside in the District of Columbia since they have failed to object to personal jurisdiction. *See* Defs.' Mot. at 1. Not only did the Defendants fail to formally object to personal jurisdiction,

but they failed to discuss personal jurisdiction at all. When the Defendants briefly mentioned residency, they discussed the location of their principal headquarters instead of the districts where the Defendants are subject to personal jurisdiction as required by the relevant residency definition. *See id.* at 12. And at one point in their brief, the Defendants even expressly told the Court that it "need not reach the issue as to whether any Defendant is subject to its personal jurisdiction." *See id.* By waiving personal jurisdiction, the Defendants made venue proper in the District of Columbia.[3]

### C.    Failure to State a Claim

This brings us to the Defendants' motion to dismiss for failure to state a claim upon which relief can be granted. The Court finds that the Plaintiffs have not pleaded plausible claims under the Consumer Financial Protection Act and the prior consent judgments. As to the statutory claims, there is no private right of action. And as to the consent-judgment claims, the Plaintiffs lack standing to enforce the judgments. The Court therefore dismisses these claims with prejudice under Rule 12(b)(6).

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a complaint has properly stated a claim upon which relief may be granted." *Kursar v. Transp. Sec. Admin.*, 751 F. Supp. 2d 154, 163 (D.D.C. 2010). "In evaluating a motion under Rule 12(b)(6), the court must 'treat the complaint's factual allegations as true . . . and must grant [the] plaintiff the

---

[3] The pro se Plaintiffs here pleaded transactional venue instead of residential venue in their Complaint. *See* Compl. ¶¶ 13–14. But because venue is an affirmative defense, they were not required to address it in their pleading. *Uni-Top Asia Investment Ltd. v. Sinopec Int'l Petroleum Exploration and Prod. Corp.*, 600 F. Supp. 3d 73, 78 (D.D.C. 2022). Later, in opposing the Defendants' Motion to Dismiss, the Plaintiffs argued that the Defendants were residents of the District of Columbia. *See* Pls.' Opp'n at 14–15. And alleging residential venue in an opposition is sufficient considering the burden to prove venue does not attach until *after* "an objection has been raised," *Aguilar*, 292 F. Supp. 3d at 9.

benefit of all inferences that can be derived from the facts alleged.'" *Donelson v. U.S. Bureau of Prisons*, 82 F. Supp. 3d 367, 370 (D.D.C. 2015) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotations and citations omitted)). "[F]ilings by a *pro se* litigant 'must be held to less stringent standards than [those] drafted by lawyers.'" *Akosile v. Armed Forces Ret. Home*, 141 F. Supp. 3d 75, 88 (D.D.C. 2015) (quoting *Atherton v. Dist. of Columbia Off. of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009)). That said, "[a] pro se complaint, like any other, must present a claim upon which relief can be granted." *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981). Courts are not required to "accept inferences unsupported by the facts alleged in the complaint" just because a party is proceeding pro se. *Fennell v. AARP*, 770 F. Supp. 118, 125 (D.D.C. 2011) (quoting *Kaemmerling v. Lappin*, 553 F.3d 669, 677 (D.C. Cir. 2008)).

### 1.    Federal Statutory Claims

The federal statutory provisions at issue do not create private rights of action. The Plaintiffs first cite 12 U.S.C. § 5531, which states that the CFPB "may take [certain actions] to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice . . . in connection with" consumer financial products or services. 12 U.S.C. § 5531. On its face, this does not create a private right of action since it refers only to actions taken by the CFPB. *Cf. Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). For this reason, "district courts have uniformly held that the language in Section 5531 . . . does not confer a private right of action." *Jah Kente Int'l, Inc. v. Indus. Bank of Washington, D.C.*, No. 22-cv-848, 2023 WL 11056262, at *2 (D.D.C. June 26, 2023) (collecting cases).

The Plaintiffs next cite 12 U.S.C. § 5536, which provides that "[i]t shall be unlawful for . . . any covered person or service provider . . . to engage in any unfair, deceptive, or abusive act

or practice." 12 U.S.C. § 5536(a). The D.C. Circuit recently "held that this provision . . . does not confer a private right of action." *Jah Kente Int'l, Inc.*, 2023 WL 11056262, at *2 (citing *Johnson v. Cap. One Bank, N.A.*, No. 22-7042, 2023 WL 2733486, at *1 (D.C. Cir. Mar. 31, 2023)); *see also Johnson v. Cap. One Bank (USA) N.A.*, No. 22-cv-363, 2022 WL 1091226, at *1 (D.D.C. Apr. 12, 2022) (clarifying that Section 5536 was at issue in the case before the D.C. Circuit). Without a private right of action, the Plaintiffs cannot bring their federal statutory claims.

### 2.    Consent Judgments

The Plaintiffs' consent-judgment claims also fail. None of the Plaintiffs were parties to the prior civil actions. *See* Compl., Ex. A (listing only the CFPB, forty-nine states, and the District of Columbia as plaintiffs); Compl., Ex. B (listing only forty-nine states and the District of Columbia as plaintiffs). Nor were they mentioned as parties in either consent judgment. *See* Compl., Ex. A1; Compl., Ex. B1. So they are "unable to enforce any obligation imposed upon the parties to the judgment[s]." *McCain v. Bank of Am.*, 13 F. Supp. 3d 45, 55 (D.D.C. 2014).

The Plaintiffs argue that they "were made parties of interest in the civil actions . . . by the State Attorneys General appearing pursuant to authorities conferred upon them." Compl. ¶ 3; *see also id.* ¶¶ 26 (saying the CFPB and state attorneys general appeared "on behalf of the Mass Tort Plaintiffs"); 29 (saying the state attorneys general appeared "on behalf of the Mass Tort Plaintiffs"). But the fact that the CFPB and the state attorneys general were acting in the interest of the Plaintiffs does not make the Plaintiffs parties to those actions. Nor does listing the CFPB and the District of Columbia as co-plaintiffs change the analysis since those entities are not parties to this action. *See supra*, at 7–11.

The consent judgments do not provide the Plaintiffs with third-party standing either. Consent judgments are sometimes called consent decrees. *See* Bryan A. Garner et al., *The Law of*

*Judicial Precedent* 77 (2016) ("[T]he distinction has become less one of substance than of idiom."). And the D.C. Circuit has taught that "[u]nless a government consent decree stipulates that it may be enforced by a third-party beneficiary, only the parties to the decree can seek enforcement of it." *Rafferty v. NYNEX Corp.*, 60 F.3d 844, 849 (D.C. Cir. 1995). This principle has become well established in this Circuit. *See, e.g.*, *McCain*, 13 F. Supp. 3d at 54; *Ananiev*, 968 F. Supp. 2d at 131–32.

The Plaintiffs cite several authorities for the proposition that consent decrees are governed by general contract principles and can therefore be enforced by intended third-party beneficiaries. *See* Pls.' Opp'n at 23–24 (citing *Hook v. State of Ariz. Dep't of Corr.*, 972 F.2d 1012, 1014 (9th Cir. 1992); *Berger v. Heckler*, 771 F.2d 1556, 1565–66 (2d Cir. 1985); *Lavapies v. Bowen*, 687 F. Supp. 1193, 1207 (S.D. Ohio 1988); Fed. R. Civ. P. 71). But the D.C. Circuit has already reconciled that proposition with its rule, explaining that it is a "basic contract principle that third party beneficiaries of a Government contract are generally assumed to be merely *incidental* beneficiaries, and may not enforce the contract absent clear intent to the contrary." *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C. Cir. 1993). So the general rule against third-party enforcement of government consent decrees absent an express stipulation governs this case.

Neither consent judgment stipulates to enforcement by the Plaintiffs. The judgment against Ocwen provides that "[a]n enforcement action . . . may be brought by any Party to this Consent Judgment or the Monitoring Committee." Consent J., Ex. D ¶ I(2), *CFPB v. Ocwen Fin. Corp.*, No. 13-cv-2025 (D.D.C. Feb. 26, 2014), ECF No. 12-4. And the judgment against PHH provides that enforcement actions may be brought by a "government signatory" or "State Attorneys General." Compl., Ex. B1. Other courts in this district have held that similar language was insufficient to establish third-party standing. *See, e.g.*, *Conant v. Wells Fargo Bank, N.A.*, 24 F.

Supp. 3d 1, 16 (D.D.C. 2014) (saying enforcement actions may be brought by a "Party to this Consent Judgment or the Monitoring Committee"); *Fontaine v. JPMorgan Chase Bank, N.A.*, 42 F. Supp. 3d 102, 110–11 (D.D.C. 2014) (same). This Court agrees.

The Plaintiffs' argument that the consent judgments' release terms "allow[] and subject[] [the] Defendants to claims by third-parties," Pls.' Opp'n at 23–24, misunderstands how release terms work. Both provisions cited by the Plaintiffs say that "[c]laims and defenses asserted by third parties, including individual mortgage loan borrowers on an individual or class basis[,]" were not released by the terms of the judgment. *See* Compl., Ex. A2, § IV, ¶ 11; Compl., Ex. B2, § III, ¶ 9. This means that claims by the individual Plaintiffs are *not barred* by the consent judgments, *not* that they are permitted by the consent judgments.

To understand why this is the case, we need to read the rest of the release terms. They provide that by signing the consent judgments, the government plaintiffs agree not to bring "any civil or administrative claim . . . arising out of" certain specified conduct by the Defendants; in other words, the government plaintiffs "released" those claims. Compl., Ex. A2, § 2; Compl., Ex. B2, § II. This is to be expected in a consent judgment because consent judgments are deals reached between the parties, and the Defendants presumably wanted to ensure finality by barring certain future claims. Against this backdrop, the language cited by the Plaintiffs makes more sense. It merely says that claims by third parties arising out of the same conduct are not released—that is, they are not barred by the consent judgment. It does not say that third parties have the power to enforce the consent judgments.

## D. Subject Matter Jurisdiction

All that remains are the state law claims, but the Court lacks subject matter jurisdiction over those. *Cf.* Defs.' Mot. at 18–20; *see also id.* at 9 (citing Fed. R. Civ. P. 12(b)(1)).

More specifically, the Court lacks supplemental jurisdiction since no federal claims are left, and the Court lacks diversity jurisdiction because of a lack of complete diversity.

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a case for a lack of subject matter jurisdiction. "Federal district courts are courts of limited jurisdiction and 'possess only that power conferred by [the] Constitution and [by] statute.'" *Logal v. Dep't of Veterans Affairs*, 357 F. Supp. 2d 149, 152 (D.D.C. 2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "Because subject-matter jurisdiction focuses on the court's power to hear the claim, . . . the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim." *Flynn v. Veazey Const. Corp.*, 310 F. Supp. 2d 186, 190 (D.D.C. 2004).

It is not entirely clear from the Complaint which specific state consumer protection laws the Defendants are alleged to have violated. *See* Compl. ¶¶ 68 ("consumer protection laws"), 71 (same). But the Court lacks federal-question jurisdiction under 28 U.S.C. § 1331 since the claims do not arise under federal law, and it lacks diversity jurisdiction under 28 U.S.C. § 1332(a) since there is no complete diversity. "For diversity jurisdiction to exist, no plaintiff may share state citizenship with any defendant." *CostCommand, LLC v. WH Adm'rs, Inc.*, 820 F.3d 19, 21 (D.C. Cir. 2016). But the individual Plaintiffs and PHH Mortgage Corporation are all citizens of New Jersey for diversity purposes.

The Plaintiffs are all citizens of New Jersey. "An individual has citizenship in a state for diversity purposes if he is an American citizen and is domiciled in the state." *Id.* "Domicile is determined by two factors: physical presence in a state, and intent to remain there for an unspecified or indefinite period of time." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984). The Complaint states that all of the Plaintiffs own or used to own homes in

New Jersey, Compl. ¶ 3, and nothing in the record suggests they were not present in New Jersey with an intent to stay. The Court therefore concludes that the Plaintiffs are citizens of New Jersey.

And PHH Mortgage Corporation is a citizen of New Jersey as well. "A corporation is a citizen of its place or places of incorporation, as well as its principal place of business." *CostCommand LLC*, 820 F. 3d at 21. The Complaint states that PHH maintains its "principal place of business in Mount Laurel, New Jersey." Compl at 7. It is therefore a citizen of New Jersey for diversity purposes. Given that at least one of the Defendants shares state citizenship with the Plaintiffs, the Court lacks diversity jurisdiction over the state law claims.

The Court also lacks supplemental jurisdiction over the state law claims. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. It is true that the Plaintiffs' state law claims are closely related to their federal claims. *See* Compl. ¶ 12. But for the reasons explained above, *supra*, at 17–21, the federal claims have been dismissed, so the Court cannot exercise supplemental jurisdiction over the remaining state law claims. The Court therefore dismisses the state law claims under Rule 12(b)(1) without prejudice.

\* \* \*

The Court recognizes the gravity of the Plaintiffs' allegations. Homeownership is at the heart of the American dream. According to these homeowners, their mortgage servicers turned that dream into a nightmare. They claim that the Defendants committed fraud and forged documents in order to unlawfully take their homes through the foreclosure process. And they say that their servicers lied throughout the state court proceedings and even broke into one of their

homes to steal their belongings. By dismissing this case, the Court does not endorse such behavior as lawful or within the bounds of decency. This opinion merely says that these are not the legal theories by which the Plaintiffs will achieve justice in this particular Court.

### CONCLUSION

For the foregoing reasons, the Court grants the Defendants' Motion to Dismiss, ECF No. 6. There is therefore no need to reach the Plaintiffs' Motions for Preliminary Injunction, ECF Nos. 4, 17, which the Court denies as moot. *See, e.g.*, *United to Protect Democracy v. Presidential Advisory Comm'n on Election Integrity*, 288 F. Supp. 3d 99, 116 (D.D.C. 2017).

A separate order will issue.


_____
SPARKLE L. SOOKNANAN
United States District Judge


Date:   March 19, 2025